[Civ. No. 6609.   Third Dist., Jan. 5, 1942.]

W. R. LAUGENOUR, as Trustee, etc., Plaintiff and Respondent, v. HAZEL FOGG, Defendant and Respondent; JOE J. ZOPFI, as Guardian, etc., Appellant.

James F. Gaffney and Peter Mannino for Appellant.

Mervin H. Reith for Plaintiff and Respondent.

Albert Michelson and A. G. Bailey for Defendant and Respondent.

PARKER, J. pro tem.—The question presented here, while it may not be simple, is at least definite and clear-cut.

From the nature of the case, as it will disclose itself, a detailed statement of the facts would have as its sole result the embalming in buckram of a story that would serve only to arise as future embarrassment to innocent and blameless persons unhappily drawn into the controversy.  Both parties agree that there is for determination but one point of law upon which the entire controversy hinges and the proceeding becomes in reality one following a practice adopted in some courts, namely, a certification of the question involved.

In the instant case the appellant presents the question as follows: Does section 230 of the Civil Code contem-

plate, in order to effect the legitimation of a child, that the father must take the child into his wife's home for reception there, with the wife's consent, under circumstances wherein the father had separated and lived apart from the wife, and had continuously lived, and maintained a settled and fixed home with his illegitimate child and her mother, always acknowledging the child as his own for a period of seventeen years?

The respondent presents the question, in slightly different form, as follows: Can a married man, the father of an illegitimate child, adopt such child under section 230 of the Civil Code by separating and living apart from his wife and living with the mother of said illegitimate child, and having said child live with them, and acknowledging the child as his own, without any consent having been given by the wife and without her even knowing of such illegitimacy?

To both of these questions may be added, concededly, the further statement that in both it is assumed to be understood that there had been no divorce between the spouses.

The questions as respectively propounded could be narrowed down to the one simple query, as follows: Does section 230 of the Civil Code mean what it says or must it be construed as merely a moral precept intended for general guidance as inclination might determine?

Section 230 of the Civil Code reads as follows:

"The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, *with the consent of his wife,* if he is married, *into his family,* and otherwise treating it as if it were a legitimate child, thereby adopts it as such. . . ." (Italics added.)

This section was adopted in 1872 and, throughout the changing conditions of the ensuing years, has not been amended. The section has been before the courts on many occasions when fortunes have been at stake and prominent families involved. Through all this time there has never been placed upon the language used any construction other than the plain words import.

The argument is stressed in the case before us that we should consider the plight of the illegitimate child as the foremost factor in the case. At the outset it may serve some purpose to dispose of this contention. In the case of *Blythe* v. *Ayres,* 96 Cal. 532 [31 Pac. 915, 19 L. R. A. 40], we find on

page 574 the court's announcement of the principle that the concern is not a cause for anxiety for the interest of the illegitimate child so much as for that of the father and his family, e. g., the other children, his collateral relations. In the dissent of Justice McFarland in the same case, at page 594, this revered justice uses language certainly strong enough to dispel the argument of the appellant here. He states that the law must be applied just the same to a case where half a dozen legitimate children had been left a small estate and a brood of asserted illegitimates were clamoring for half the patrimony. Quoting, he says further:

"No doubt, illicit sexual relations sometimes impose hardships on innocent persons; but such is the result of all violations of law. The legislature could abolish all distinctions between legitimate and illegitimate children, but if it should do so, it would practically abolish marriage, and dethrone chastity as the queen of womanly virtues."

For further general comments along the same line reference is made to the *Estate of De Laveaga*, 142 Cal. 158 [75 Pac. 790].

Cases without number could be cited and the subject, without citation, offers a wide field for rhetorical moralizing. We may pass over the earlier cases and come down to some of the more recent holdings on the application of the section under discussion.

In the *Estate of Baird*, 193 Cal. 225 [223 Pac. 974], we find this statement:

"This court declined in *In re Jessup*, 81 Cal. 408, 434 [21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594], to adhere to the view expressed in the first opinion written by Works, J., and concurred in by three justices, that in cases of adoption under section 230 the only strictness required should be proof of paternity; and that the paternity being satisfactorily established by plenary proof courts should lean strongly in favor of a finding that the father had performed his duty and adopted the illegitimate child. It has been the rule ever since that the elements of paternity, public acknowledgment thereof, receipt of the child into the family of the father as his own, and otherwise treating him as legitimate, must each be established by a preponderance of the evidence, and that if the proof fails in respect to any one of them there is no adoption. 'There can be no compliance with section 230 in the absence

of the conditions contemplated by that section and absolutely necessary to give it effect.' '' (See, also, *Estate of Gird,* 157 Cal. 534 [108 Pac. 499, 137 Am. St. Rep. 131].)

In *Estate of Flood,* 217 Cal. 763, 766 [21 Pac. (2d) 579], the court, after quoting the section, goes on to state:

"To establish her claim of legitimation under this section as construed by a number of decisions of this court, petitioner must sustain the burden of proof of the following elements:

(1) *Illegitimacy* ... (2) *Paternity* ... (3) *Public acknowledgment* ... (4) *Reception into the family with wife's consent* ... given with knowledge of the illegitimacy; (5) *Treatment as legitimate.*"

And in the same case, to accentuate the necessity of compliance with each requirement, the court definitely determined that at the outset petitioner was the illegitimate child and that she was received into the family of the father with the consent of the wife and was there treated as though she were legitimate. But the court also held that this showing was far from sufficient and required establishment of the other essentials, namely, paternity, public acknowledgment and knowledge on the part of the wife that the petitioner was illegitimate. The court made no short cuts nor did it make any attempt to qualify the section in any respect. It stood squarely upon the terms of the section and insisted on full compliance with every requirement thereof.

The argument of the appellant here seems to be one of expediency and the doing of justice, as a mere abstraction, without reference to the provisions of the statute. The argument is that when the father of the illegitimate child severed his relations with his lawful wife he then became a man without a home of any kind with the right to re-establish a home elsewhere, with whom he chose and under whatever conditions he chose. This, too, regardless of the laws governing divorce and a separation. It is a strange contention and if adopted would mean the end of what we have heretofore deemed the backbone of any civilized country, to-wit, the home and family.

Section 230 has stood as it is now written for almost seventy years and has been the subject of litigation and construction from the very beginning. Not one word of the original section has been changed and no construction has ever even winked at such a result as is here sought. Millions in wealth have been at stake and almost every arguable theory

has been advanced in an effort to cause the courts to relax in construction to the end that once paternity having been established the remaining requisites of the statute should be ignored. As the cited cases indicate, the attempt has failed. It is true that it has been held, and it may be conceded to be the present rule, that a single man may establish a home with his paramour and there rear the offspring without the sanctity or formality of a marriage. The reasoning of these cases is that every man can lawfully claim *a home;* if married the home is where the wife and family reside and if single he may still provide this home for whomsoever he chooses to establish the marital relation, even without the conventions. But always the word "home" is used in the singular. We deem it needless to go over all of the decisions and authorities on the subject. It seems a little impudent to require that every time the virile vagaries of some roaming Romeo run counterwise to a sane public policy we should again diagram the rules and revamp the same to meet the requirements of his particular need. If the rules are relaxed or misconstrued to the extent here sought we will unsocialize our system beyond description. The terms "home" and "family" will have no meaning other than designating sheltered centers for sex promiscuity. A man could start out in a marriage relation and when established therein even to the extent of a large family could begin to branch out as his capacity permitted. At each stop he could remain long enough to make public acknowledgment of an incidental paternity and then roam on to the next stop and in these days of easy transportation could cover much territory. If each one of these landings could assume the dignity of a home and each group become a family within the law then the chaotic conditions would require complete abandonment of all of the sane notions we now entertain and encourage.

We can see no particular hardship resulting from an adherence to the rule which protects the entire social order. If a man or a woman has grounds justifying separation the law is certainly liberal enough to free them from the exacting bonds that have been voluntarily assumed. If it be deemed best to ignore the law and the general compact governing parental and family relations then, by the same token, the same law should not be sought as a refuge in cases where the misadventure might be turned into a benefit only for those ignoring it.

Manifestly, in our opinion, the trial court was correct in holding that where the wife has no knowedge of the illegitimate child and the said child is never received into the family of the father, there can be no adoption.

The judgment is affirmed.

Tuttle, J., and Thompson, Acting P. J., concurred.