**Diane L. McDANIEL, a Minor, by Charlene F. McDaniel, also known as Charlene F. Green, her Guardian Ad Litem, and Charlene F. Green, Plaintiffs,**

v.

**Arthur S. FLEMMING, individually, and as Secretary of Health, Education and Welfare, Social Security Administration, Defendant.**

**Civ. No. 20591.**

United States District Court
S. D. California,
Central Division.

March 24, 1959.

Elaine B. Fischel, Los Angeles, Cal., for plaintiffs, Diane L. McDaniel, a Minor, by Charlene F. McDaniel, also known as Charlene F. Green, her Guardian Ad Litem, and Charlene F. Green.

Laughlin E. Waters, U. S. Atty. for the Southern District of California, by Richard A. Levine, Asst. U. S. Atty., Chief, Civil Division, and Donald A. Fareed, Asst. U. S. Atty., Los Angeles, Cal., for defendant Arthur S. Flemming, individually and as Secretary of Health, Education and Welfare, Social Security Administration.

TOLIN, District Judge.

This case comes before the Court upon review of a decision of the Secretary of Health, Education and Welfare, Social Security Administration, which denied Social Security benefits to Diane L. McDaniel, an illegitimate child of Albert L. McDaniel, now deceased.

In the initial hearing before the Secretary, both surviving minor children of Albert L. McDaniel had petitioned for survivors' benefits under the Social Security Act because their father had continued Social Security payments until his death. The Secretary made adverse determination in the case of each of the children because of non-legitimation under California statutes. After an appeal to this Court, the case was remanded to the Secretary upon motion by both parties for reconsideration because of newly discovered evidence. The Secretary then determined that petitioner Charlene was entitled to benefits under the Act as a survivor because of legitimation under Section 255 of the California Probate Code.[1] That Section allows legitimation if a written instrument be executed by the individual who therein acknowledges himself to be the father. In the case of Charlene, a witnessed document was executed by the father, Albert, in connection with the hospitalization of the mother and child when Charlene was born. No similar document was found to have been executed in the case of Diane, however, and further efforts to qualify Diane under Probate Code Section 255 have been abandoned.

The case is now before this Court for review of the decision as to plaintiff Diane.

Each of the petitioning children is an illegitimate issue of Albert L. McDaniel and Charlene F. McDaniel, the latter also known as Charlene F. Green who now sues as guardian *ad litem*. The record of the administrative hearing shows that Albert was married in 1946 and was subsequently called into the Armed Forces. While he was in the Military Service his wife gave notice of intention to abandon the marital status and affirmatively disclosed such intention to witnesses. Thereafter, she moved away from her known residence and her whereabouts thenceforth were unknown to Albert L. McDaniel. Even though Albert did not take any legal action to terminate the marriage, he did, in January 1951, commence cohabiting with Charlene Green who soon became known as his wife. Their relationship continued until Albert's death in 1955. The two petitioners were born of this union, first, Diane, and later, Charlene.

The basis of Diane's petition for benefits under the Act arises from the fact that Section 402 of Title 42 U.S.C.A. (Social Security Act), includes those "child" dependents at the time of death of individuals currently insured to be eligible as beneficiaries, and that Section 416 provides the test as to who may qualify as such a "child" as being that "* * * as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled * * *." Since there is no question raised that Albert was other than a currently insured individual and domiciled in California, the question in this Court must be directed to whether Diane can be considered a

1. "*Illegitimate children; inheritance rights; limitations*

"Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father, and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father by inheriting any part of the estate of the father's kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried, and his father, after such marriage, acknowledges him as his child, or adopts him into his family; in which case such child is deemed legitimate for all purposes of succession. An illegitimate child may represent his mother and may inherit any part of the estate of the mother's kindred, either lineal or collateral. (Stats.1931, c. 281, p. 599, § 255, as amended Stats.1943, c. 998, p. 2912, § 1.)" California Probate Code, § 255.

"child" under the laws of devolution of intestate personal property as applied by the courts of California. Resort may be made to either Probate Code Section 255, supra, which was found not applicable to Diane, or to Civil Code Section 230.[2]

Section 230 requires a particular sequence of events leading to the legitimation of an illegitimate child, all of which must be performed by the father. As to the requirement that the father must publicly acknowledge the child as his own and that he must receive it into his family treating it as if it were a legitimate child, the evidence stands undisputed that from the time of the birth of Diane until the death of her father that he publicly acknowledged her as his own, provided for her, and treated her as his own. Nor is there any contention that Albert failed his child in this respect. However, the requirement that the legitimation be "with the consent of his wife, if he is married," presents difficulty. Consequently, resort must be made to California decisions in order to determine what is meant by this requirement in Section 230.

The early and often cited case of Blythe v. Ayres[3] establishes a liberal policy in the construction of Section 230 which has been, with perhaps one exception, followed by subsequent California decisions. The Blythe court said, 96 Cal. at page 559, 31 P. at page 916:

"The section is broad in its terms. It contains no limitations or conditions, and to the extent of the power vested in the legislature of the state, applies to all illegitimates, wherever located, and wherever born. The legislature has not seen fit to make any exception to its operation, * * *."

Later in its decision the Court said, 96 Cal. at page 576, 31 P. at page 922:

"This section of the Code is entitled to a liberal construction, because section 4 [of the Civil Code] provides: 'The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to this Code. The Code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice.' * * * *"

As a result of the liberal policy promulgated in Blythe v. Ayres, later California decisions have generally not kept within the strict dictionary definitions of the meaning of terms within Section 230. For instance, the word "family" has been held to be properly descriptive of the unit consisting only of a bachelor father and his bastard child.[4] The California Supreme Court has also said, in Estate of McNamara,[5] that "* * * the word 'family,' as used by the Code in this connection does not necessarily mean relations, but may mean the family in which or as part of which the father abides." Blythe v. Ayres also construed the word "adoption" as used within Section 230 as meaning in fact "legitimation", even though "* * * [a]doption, properly considered, refers to persons who are strangers in blood; legitimation to persons where the blood relation exists."[6]

The above considered opinions relating to the terms "family" and "adoption" as contained within Section 230 have been

2. *"Illegitimate child; adoption by father* "Adoption Of Illegitimate Child. The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this Chapter do not apply to such an adoption. (Enacted 1872)."

3. 1892, 96 Cal. 532, 31 P. 915, 19 L.R.A. 40.

4. Estate of Jones, 1913, 166 Cal. 108, 135 P. 288; In re McGrew, 1920, 183 Cal. 177, 190 P. 804.

5. 1919, 181 Cal. 82, 183 P. 552, 558, 7 A.L.R. 313.

6. Blythe v. Ayres, supra, 96 Cal. at page 559, 31 P. at page 916.

used here to illustrate the fact that the interpretation of its terms has been extremely liberal, rather than strict, with favoritism toward the child. Other cases construing both Probate Code Section 255 and Civil Code Section 230 are legion, and by far the greater majority are in accord with the policy set forth by the Court in Blythe v. Ayres.

A case not within this liberal policy is Laugenour v. Fogg,[7] cited by the defendant. It represents one of the occasional departures from the great flow of the more liberal California decisions in this area which have been rendered since Blythe v. Ayres. Laugenour is out of step with the trend and the majority of case decisions in California and is not representative of the California Appellate decisions on the subject. This Court is now considering what is meant by the statutory phrase in Section 230 requiring "consent of his wife", as applicable to the legitimation of an illegitimate child, and whether such term was meant to apply to a *de facto* wife, i. e. the woman with whom the father of the child is living, or whether the term must be limited to include a previously existing wife who has neither had contact with the father for a considerable length of time nor is living with the father at the time of legitimation. The Laugenour decision held that the term "wife" included a woman who had lived apart from her legal husband, the father, for seventeen years and, in effect, that consent be required of that woman who not only had no further relationship with the husband but also had placed herself in such a position that she would not participate in rearing the family. This case does not appear to be in line with the usual liberal policy of the California decisions which have construed the terms of Section 230. In fact, the subsequent case of Estate of Lund,[8] decided just two years later than Laugenour, omits any reference to Laugenour and it appears that the extremely narrow view of Laugenour is not representative of the usually accepted construction of Section 230 in the California courts today.

In view of the long favorable history of the rules prescribed at least as early as Blythe v. Ayres, plus the fact that this current application for Social Security benefits is being made with a history of the decedent having paid contributions toward the very benefits the plaintiff seeks to obtain, the Judgment of the Court will be for the plaintiff.

Counsel shall prepare findings of fact, conclusions of law and judgment within five days, as prescribed in Local Rule 7, West's Ann.Cal.Code.

---

7. 1942, 48 Cal.App.2d 848, 120 P.2d 690.

8. 1945, 26 Cal.2d 472, 159 P.2d 643, 162 A.L.R. 606.