[Civ. No. 15820.   Second Dist., Div. Three.   June 24, 1947.]

Estate of ALOYSIUS PETER HUGHES, Deceased.
EULDENE F. HUGHES, Appellant, v. PETER JAY
HUGHES, a Minor, etc., et al., Respondents.

Lee Combs, Wallace B. Scales and Robert W. McIntyre for
Appellant.

M. Lewis Lehman for Respondents.

SHINN, Acting P. J.—Euldene F. Hughes appeals from the portion of an order which denied her a widow's allowance in the estate of Aloysius Peter Hughes, the sole ground of the decision being that appellant was not legally married to the decedent. By the same order $200 a month was allowed for the support of Peter J. Hughes, son of appellant and decedent. The estate was found to have a net value of some $70,000 and a probable net annual income of between $5,000 and $6,000. While it was also found that appellant had an income of some $300 per month, her application was not denied upon that ground. The sole question is whether the evidence supports the finding that appellant is not the widow of decedent. Principal respondents on the appeal, to be referred to as respondents, are Ethel Toney, a creditor and a named beneficiary in the will of decedent, and James L. Hughes, also a creditor, both of whom filed objections to appellant's petition for family allowance.

The facts upon which the trial court based its decision that appellant is not the surviving widow are the following: A. P. Hughes, decedent, married Genevieve M. Albitz prior to 1926, and was divorced by her interlocutory decree entered March 4, 1926, in Kern County. On August 19, 1944, A. P. Hughes caused a final decree of divorce to be entered, none having been theretofore signed or entered. He married appellant Euldene March 22, 1927, 1 year and 18 days subsequent to the entry of the interlocutory decree and died September 29, 1945. On February 8, 1946, upon affidavit and application of Euldene, the court entered a final decree in the suit of *Genevieve M. Hughes* v. *Aloysius P. Hughes,* on its own motion, and ordered that said final decree be entered *nunc pro tunc* as of the 4th day of March, 1927. The trial court held this latter decree to be void and likewise held to be void Euldene's marriage to decedent, upon the ground that it was celebrated before a final decree had been entered in the divorce action.

Prior to 1935, the procedure for entry of final judgments of divorce was governed by section 132 of the Civil Code. A marriage was dissolved only by and as of the date of entry of a final judgment and no provision was made for entry of such judgment *nunc pro tunc.* Section 132 provides that the death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment but that such entry shall not validate any marriage contracted by either party before the entry of such final judgment or constitute any defense of any criminal prosecu-

tion made against either. Marriages contracted prior to the entry of final judgment were void and there was no procedure by which they could be validated. In 1935, section 133 was enacted. It expressly authorizes the court to enter final judgment *nunc pro tunc* as of the date when final judgment could have been given or made in the event that by mistake, negligence, or inadvertence none has been entered, or in the event one has been entered but by mistake, negligence or inadvertence has not been signed, filed or entered as soon as could have been done under the law if applied for. It further provides that upon the filing of such final judgment the parties shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment and that any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment.

It was held in *Macedo* v. *Macedo*, 29 Cal.App.2d 387 [84 P.2d 552], that section 133 was intended to be retroactive; that it is both remedial and curative; that it violates no constitutional restriction, and that the entry of a final decree *nunc pro tunc* as of the date when a final decree could first have been lawfully entered was effective, by virtue of the section, to validate a marriage contracted more than one year after the entry of an interlocutory decree and before the entry of a final decree.

The *nunc pro tunc* judgment upon which appellant relies was effective to validate her marriage, unless the death of Mr. Hughes deprived the court of the power to enter it. Whether such power existed depends upon the effect to be given to sections 132 and 133. It has been held that an interlocutory judgment of divorce does not sever the marital relationship or deprive the surviving spouse of property rights derived from that relationship upon the death of the other spouse prior to the entry of a final decree (*Estate of Dargie*, 162 Cal. 51 [121 P. 320]; *Estate of Seiler*, 164 Cal. 181 [128 P. 334, Ann.Cas. 1914B 1093]; *Gloyd* v. *Superior Court*, 44 Cal.App. 39 [185 P. 995]), and that the court is powerless by entry of a final decree after the death of one of the spouses to change the relationship which existed at the time of death or deprive the surviving spouse of rights of succession to the property of the deceased spouse (*Gloyd* v. *Superior Court*, *supra; Gould* v. *Superior Court*, 47 Cal.App. 197 [191 P.

56].)  It has also been held that a disposition of property rights by the interlocutory decree, whether or not based upon agreement, becomes conclusive upon the interlocutory decree's becoming final and is not vacated by the death of one of the parties.  (*Klebora* v. *Klebora,* 118 Cal.App. 613 [5 P.2d 965] ; *Gould* v. *Superior Court, supra.*)  It has been suggested that the purpose of section 132, in providing for entry of a final decree after the death of one of the spouses, was to enable the court to confirm by final decree disposition of property made by interlocutory decree.  (*Estate of Seiler, supra; Gloyd* v. *Superior Court, supra.*)  From these decisions respondents evolve a theory that a final decree is ineffectual for any purpose other than to terminate the marital relation or, if entered after the death of one of the parties, to confirm dispositions of property made by the interlocutory decree. Therefore, it is argued, if one of the parties has died, a final decree cannot operate to change the relationship that existed at the time of death.  The decisions relied upon by respondents insofar as they limit the operation of a final decree of divorce merely gave effect to section 132 and are of no assistance.  The argument of respondents ignores the effect of section 133, which was enacted for the purpose of avoiding conditions due to the inadequacy of section 132.  The purpose was to validate otherwise void marriages and thus relieve the parties to such marriages from the stigma and other consequences of bigamous relationships into which they might innocently fall by reason of oversight or neglect to have a final decree entered.  Mere entry of the *nunc pro tunc* judgment acts retroactively to restore them to the status of single persons and at the same time gives them and their later acquired spouses legal married status.  It is all strictly artificial, but so is the semidivorced status occupied by the holders of an interlocutory decree.  The purpose of the law is not satisfied by the death of one of the parties prior to the entry of a *nunc pro tunc* judgment.  True, death severs the marital relationship, but it severs it only as of the date of death, while the statute is designed to accomplish more than this.  A final judgment, in usual form, dissolves the marriage as of the date of entry of the judgment.  That is sufficient where other rights are not involved.  Section 133 was enacted for the protection of such other rights and provides that even though a marriage has been dissolved by a final judgment, a *nunc pro tunc* judgment may be entered thereafter to accomplish the

further purpose of validating otherwise invalid marriages. Section 132 gives the court authority to enter a final judgment after the death of either party. The two sections must be read together. While before the adoption of section 133 a final judgment entered after the death of either of the parties did not have the effect of validating an invalid marriage, the two sections read together now authorize the entry of a *nunc pro tunc* judgment after the death of either of the parties, and such judgment has the effect declared by section 133. Certainly if Mr. Hughes' first wife, Genevieve, had remarried before entry of a final judgment, the death of Mr. Hughes would not have deprived her of the right to have a *nunc pro tunc* judgment entered for the purpose of validating her marriage. To allow his death to deprive appellant of all rights under section 133 would unjustifiably and unreasonably limit the scope of that section. It seeks to accomplish a beneficent purpose and the court should give it a construction as broad as its purpose appears to be. We hold, therefore, that appellant's marriage to Mr. Hughes was validated by the *nunc pro tunc* judgment.

Appellant's second ground of appeal is valid. The contention is that the question of the validity of the marriage was res judicata. Appellant instituted an action for divorce against Mr. Hughes in 1944, naming Ethel Toney and James L. Hughes as defendants, the former as corespondent and the latter as a claimant to an interest in real property which, it was alleged, was the community property of appellant and her husband. The defendants appeared, the action was tried, and by the judgment rendered in appellant's favor it was determined that she and Mr. Hughes had legally married in 1927. In the instant proceeding appellant relied upon the judgment as a final adjudication of the validity of the marriage. The judgment was proved, but the court refused to accord this effect to it, on the grounds that it was not a final judgment and that it was not binding upon respondents Ethel Toney and James L. Hughes.

Euldene had given notice of appeal from the judgment but thereafter, and prior to the death of Mr. Hughes, had dismissed and abandoned her appeal as to him. Manifestly her notice of appeal would not have been effective to bring in question the adjudication that she was lawfully married, which was in her favor and was the primary basis of her action.

A party may not appeal from a judgment or order made in his favor (*Estate of Funkenstein,* 170 Cal. 594 [150 P.

987]; *United Railroads* v. *Colgan,* 153 Cal. 53 [94 P. 245]; *Maxwell Hardware Co.* v. *Foster,* 207 Cal. 167 [277 P. 327]; *Estate of Crooks,* 125 Cal. 459 [58 P. 89]; *Youle* v. *Thomas,* 146 Cal. 537 [80 P. 714]), and if he does give notice of appeal from a judgment which grants him relief, because it grants him too little, it will not be considered as an appeal from the judgment insofar as it is in his favor. (*Maxwell Hardware Co.* v. *Foster, supra.*) Ethel Toney did not appeal from the judgment in the divorce case. James L. Hughes gave notice of appeal, but only from the portion of the judgment which affected the title to a parcel of property in which he was claiming an interest. The appeal taken by Euldene, having been dismissed as to A. P. Hughes, and the limited appeal taken by James L. Hughes, invested the reviewing court with jurisdiction to determine matters in controversy between the two appellants, but these related only to claims to real property. Under neither appeal would the reviewing court have been authorized to disturb the adjudication of marriage. Any doubt as to the correctness of these views will be dispelled by reading the opinion which was rendered upon that appeal subsequent to the making of the order here appealed from. The judgment was modified by deletion of a provision which related to title to real property which was not in issue, and in all other respects was affirmed. (*Hughes* v. *Hughes,* 74 Cal.App.2d 327 [168 P.2d 429].)

■ An interlocutory decree of divorce, unless vacated on motion for new trial, motion under section 473, Code of Civil Procedure, or on appeal, is a final adjudication as to all matters therein decided. The only question held in abeyance pending the entry of a final decree is the final dissolution of the marriage. (*Claudius* v. *Melvin,* 146 Cal. 257 [79 P. 897]; *Abbott* v. *Superior Court,* 69 Cal.App. 660 [232 P. 154]; *Borg* v. *Borg,* 25 Cal.App.2d 25 [76 P.2d 218]; *Overell* v. *Superior Court,* 29 Cal.App.2d 418 [84 P.2d 789]; *Parnham* v. *Parnham,* 32 Cal.App.2d 93 [89 P.2d 189]; *Gould* v. *Superior Court,* 47 Cal.App. 197 [191 P. 56].) The judgment was a final adjudication as to the marriage, for the reason that the pendency of the two appeals did not affect the finality of that adjudication. It was said in *Estate of Lee,* 200 Cal. 310, 314 [253 P. 145]: ''A divorce proceeding in so far as it relates to the marriage relation of the parties to the action and the termination of the marriage status is a proceeding *in rem* (*In re Newman,* 75 Cal. 213 [7 Am.St.Rep. 146, 16 P. 887]). Such an action is brought for the purpose

of establishing judicially the matrimonial status of the parties and, if it be found that a matrimonial relation exists, then for the purpose of a dissolution of that relation (*Gridley* v. *Boggs,* 62 Cal. 190, 202; *De la Montanya* v. *De la Montanya,* 112 Cal. 101 [53 Am.St.Rep. 165, 32 L.R.A. 82, 44 P. 345]). As a judgment *in rem* it is binding upon all the world as to the determination of the marital status of the parties and is immune from collateral attack (*People* v. *Perris Irr. Dist.,* 132 Cal. 289 [64 P. 399, 773]; 15 Cal.Jur. 239), except on grounds specified by the code (sec. 1916, Code Civ. Proc.), none of which is urged here. The judgment here under consideration was a conclusive determination of the status of the parties to said action as husband and wife from May 16, 1895, to the dissolution of that relation by the judgment of divorce on March 26, 1903.''

It is unnecessary to consider whether Ethel Toney and James L. Hughes would have been bound by the adjudication of marriage if they had not been parties to the divorce action and not in privity with A. P. Hughes (see *Blumenthal* v. *Blumenthal,* 97 Cal.App. 558 [275 P. 987], relied upon by respondents). They were parties and the validity of the marriage was in issue as to them as, respectively, the corespondent and a claimant to real property, asserted by Euldene to be community property. Under settled principles they are bound by the judgment as parties litigant and for the further reason that in the instant proceeding both appear as creditors of A. P. Hughes, and Ethel Toney, also as a beneficiary under his will. *Estate of Lee, supra,* is directly in point. ''It is well settled that a judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties or their privies whenever the existence of that fact is again in issue between them, not only when the subject-matter is the same, but when the point comes *incidentally* in question in relation to a *different* matter in the same or any other court'' (citing cases). (*Denio* v. *City of Huntington Beach,* 74 Cal.App.2d 424, 431 [168 P.2d 785].)

The order is reversed as to the portion appealed from. The court is directed to make a finding that Euldene F. Hughes is the widow of decedent and to determine the other issues raised by her petition and the objections thereto.

Wood, J., and Kincaid, J. pro tem., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 21, 1947.