[S. F. No. 20833.  In Bank.  Dec. 18, 1962.]

Adoption of FREDERICK ELMER GRAHAM, JR., et al.,
Minors.  FREDERICK ELMER GRAHAM, Intervener
and Appellant, v. LORETTA MOE SULSER et al.,
Defendants in Intervention and Respondents; STATE
DEPARTMENT OF SOCIAL WELFARE et al., De-
fendants and Respondents.

[S. F. No. 20834.  In Bank.  Dec. 18, 1962.]

Adoption of FREDERICK ELMER GRAHAM, JR., et al.,
Minors.  JOSEPH MONIS et al., Petitioners and Ap-
pellants, v. STATE DEPARTMENT OF SOCIAL WEL-
FARE et al., Defendants and Respondents.

[Consolidated Cases.]

Johnson, Thorne, Speed & Ramford and H. Reed Searle for Intervener and Appellant, and Petitioners and Appellants.

Stanley Mosk, Attorney General, Harold B. Haas, Assistant Attorney General, Elizabeth Palmer, Deputy Attorney General, Spencer M. Williams, County Counsel (Santa Clara), and

Joseph G. Schumb, Deputy County Counsel, for Defendants and Respondents.

WHITE, J.*—Consolidated appeals are taken by Frederick Elmer Graham, plaintiff in intervention, from that portion of a judgment to the effect that he failed to legitimate his two minor children, the subject of the instant adoption proceedings, and by Joseph and Ruth Monis, husband and wife, from that portion of the judgment dismissing their petition for the adoption of the said minors.

The facts are not in dispute. In 1951, Jessie Rinella Graham obtained an interlocutory decree of divorce from Frederick Elmer Graham, but no final decree was entered until 1960 as hereinafter appearing. Loretta Moe Sulser was married to John Moe in 1953, and that marriage was annulled in 1958. Between dates in 1954 and 1958 Frederick and Loretta lived together while their aforesaid marriages to other persons during the period of their cohabitation were still in effect. Two children, Frederick, Jr. and Frank, were born to them in 1955 and 1956, respectively. In 1958 Loretta left Frederick and the minor boys were placed in a foster home. Shortly thereafter Frederick removed them from the foster home and on March 23, 1959 placed them in the custody of the Santa Clara County Welfare Department. On March 15, 1960, after their marriage had been annulled, Loretta and John Moe signed relinquishments of the boys to the Santa Clara County Adoption Agency for adoption. John Moe relinquished the boys as their presumptive father, as he was Loretta's husband at the time of the birth of both boys (Civ. Code, § 193), and the presumed legitimacy of the boys continued after the annulment. (Civ. Code, § 84.) The relinquishments were filed with the State Department of Social Welfare on March 17, 1960. (See Civ. Code, § 224m.)

On April 1, 1960, Joseph and Ruth Monis, who as foster parents had the children in their home for a short period of time, filed the instant petition for the independent adoption of the boys, alleging that they were the legitimate children of Frederick and Loretta. A petition was thereafter filed in that action in behalf of the Santa Clara County Adoption Agency praying that it be joined as a necessary party and that the petition for adoption be dismissed on the ground that

---

*Assigned by Chairman of Judicial Council.

the boys had been effectively relinquished to the agency for adoption. The agency was joined by stipulation.

On June 24, 1960, the aforesaid complaint in intervention was duly filed by Frederick Elmer Graham and John Moe in the adoption proceedings. It was alleged therein that John, although married to Loretta at the time of the birth of the boys to her, was neither their natural nor their legal father, and that Frederick was the natural father and had publicly acknowledged them and received them into his family. Plaintiffs in intervention prayed that the court declare the parental facts as alleged, and further declare both minors to be the legitimate children of Frederick.

Proceedings were pending as described when Jessie obtained her final decree of divorce from Frederick on October 26, 1960. The decree was entered *nunc pro tunc* as of June 2, 1952, under the provisions of section 133 of the Civil Code.[1] The statutory provision, on its face, purports to authorize the termination of the marriage on a date, which, in this instance, preexisted the births of the minor children herein.

Thereafter, on November 21, 1960, the State Department of Social Welfare, pursuant to Civil Code section 226, filed its report recommending that the petition for adoption by Joseph and Ruth Monis be denied on the ground that the children had been duly relinquished to a licensed adoption agency and were no longer available for adoption except through the agency. The report further stated that it was in the best interests of the children that they be adopted by persons other than Mr. and Mrs. Monis. On a trial solely on the issues raised by the complaint in intervention the trial court found that John Moe was not the natural or adoptive

---

[1]Section 133 of the Civil Code provides in part: "Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered, if no appeal has been taken from the interlocutory judgment or motion made for a new trial to annul or set aside the judgment or for relief under Chapter 8, Title 6 of Part 2 of the Code of Civil Procedure, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. . . . Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, such shall be valid for all purposes as of the date affixed to such final judgment. . . ."

father of the children; that Frederick Elmer Graham was the natural father of the children but that he had not legitimated them pursuant to Civil Code section 230[2] for the reason that he had received them into his home only when legally married to Jessie and she had not consented thereto. The court concluded that the relinquishments executed by Loretta and John Moe were valid when executed and continued to be valid and, accordingly, that the Monis' petition for adoption must be denied in the absence of the agency's placement of the children with them. (Civ. Code, § 224n[3].)

The determinative issue herein relates to the breadth of the effect to be given to the *nunc pro tunc* character of the final decree of divorce of Jessie from Frederick. It is contended by the appellants that due to the retroactive effect of the final decree Frederick's marriage had been terminated at a time prior to the births of the children; that he must be deemed to have been a single man; that Jessie's consent to the adoption and legitimation of the children by Frederick was, therefore, not required; that the children were thus the legitimate and adoptive children of Frederick, he having satisfied all other requirements of section 230 of the Civil Code; and that the children could not be relinquished for adoption by others without his participation. (See Civ. Code, § 224.) If the contention with respect to the retroactive effect of the *nunc pro tunc* order is valid, it is manifest that the appellants' conclusions would naturally follow therefrom.

It might be noted that the individual parties involved herein urge the determination of the issues primarily on grounds other than what might be in the best interests of the children. This is not a controversy between natural parents each of whom wants the children. Neither natural parent nor the presumptive parent seek to maintain any custody or control over the children. The natural and presumptive fathers claim that the natural father has a right to consent to or

---

[2]Section 230 of the Civil Code provides: "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption."

[3]Section 224n of the Civil Code provides in part: "No petition may be filed to adopt a child relinquished to a licensed adoption agency except by the prospective adoptive parents with whom the child has been placed for adoption by the adoption agency. . . ."

relinquish for the adoption of the children, evidently by the Monises. On the other hand the respondent agencies claim that a relinquishment by the presumptive parents, valid when made and filed, remains valid despite the retroactive effect of the *nunc pro tunc* decree and the claimed legitimation by the natural father. These agencies claim that the interests of the children will be best served through an adoption by others not parties to this action. A proper resolution of the issues herein does not require an application of that policy of the law which favors legitimation, as whatever the result in the instant case it appears that the children will be deemed to have been legitimated or, in any event, will become legitimate by adoption hereafter.

[██] While section 133 of the Civil Code is to be liberally construed to effectuate its object, its operation may not destroy a vested right. *(Ringel v. Superior Court,* 54 Cal. App.2d 34 [128 P.2d 558] ; *Macedo v. Macedo,* 29 Cal.App.2d 387 [84 P.2d 552].) ██ Moreover, a close examination of section 133 reveals that the Legislature intended to emphasize the retroactive effect of a *nunc pro tunc* order only in certain areas. The statute, after authorizing the entry of the final decree *nunc pro tunc,* then purports to provide for the effect of the decree in the following words : "Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, *and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment . . . shall be valid for all purposes as of the date affixed to such final judgment . . ."* (Emphasis added.) ██ The purpose of the statute has been said to "validate otherwise void marriages and thus relieve the parties to such marriages from the stigma and other consequences of bigamous relationships into which they might innocently fall by reason of oversight or neglect to have a final decree entered." *(Estate of Hughes,* 80 Cal.App.2d 550, 553 [182 P.2d 253].)

While the foregoing unquestionably states a most obvious purpose of the statute we are not prepared to hold that the statute serves no other purpose than to validate a later marriage. In different and proper circumstances it might well serve to legitimate children and to establish parent-child status even in the absence of such a marriage. But in the instant case we are faced with an intervening and concededly proper relinquishment of the children, and we are not pre-

pared to hold that such relinquishment has failed to create rights which cannot be divested by the operation of section 133. Meeting head on the policy that section 133 is to be liberally construed to effectuate its purpose is the more compelling language of the Legislature with regard to valid relinquishments, and contained in Civil Code section 224m, to the effect that the ''relinquishment authorized by this section shall be of no effect whatsoever until a certified copy is filed with the State Department of Social Welfare, after which it is *final* and *binding* and may be *rescinded only by the mutual consent of the adoption agency and the parent or parents relinquishing the child.*'' (Emphasis added.) (Civ-Code, § 224m.)

The nature of the vested right which cannot be divested by the operation of section 133 merits examination. ''The term 'vested right' is often loosely used. In one sense every right is vested. If a man has a right at all, it must be vested in him. . . . The term, however, is frequently used to designate a right which has become so fixed that it is not subject to be divested without the consent of the owner, as contradistinguished from rights which are subject to be divested without his consent. . . .'' *(Stohr v. San Francisco Musical Fund Soc.,* 82 Cal. 557, 560 [22 P. 1125] ; see also *Macedo* v. *Macedo, supra,* 29 Cal.App.2d 387, 390.) And in the *Stohr* case the court held vested rights to be those which required consent in order to be taken away. In the instant case the respondents have an unchallenged right in the relinquishments on file herein, which were valid in all respects at the time given. The applicable statute expressly provides that the right cannot be taken from them without their consent. (Civ. Code, § 224m.) The right, then, would appear to be a vested right. Little imagination is required to envision the further situation wherein a proper adoption, based upon valid relinquishments, could be set aside by the simple expedient of a *nunc pro tunc* final decree which would invalidate the relinquishments. Would not then vested rights be destroyed?

In *Adoption of Laws,* 201 Cal.App.2d 494 [20 Cal.Rptr. 64], an issue similar to that in the instant case was presented when a mother having sole custody of an illegitimate child gave a valid consent for its independent adoption. (Civ. Code, § 226.) Thereafter she and the natural father married, legitimating the child before its adoption. (Civ. Code, § 215.) The court held, at page 501, as to the validity of

the consent: "[L]egitimation by marriage subsequent to the giving of consent to adoption by a mother, then unmarried, does not retroactively operate to make the father's consent necessary." Appellants in the instant case argue that the right established due to the relinquishments, if any, should not be deemed to vest until, pursuant thereto, the children are placed in an adoptive home and they cite the *Laws* case in support thereof. The *Laws* case, holding that the subsequent legitimation of the child after the placing for and consent to adoption could not invalidate the consent, did not purport to further hold that placement was essential to the vesting of recognized rights. Moreover, the adoption proceedings there involved a consent to adoption given to the prospective adoptive parents (Civ. Code, § 226), as distinguished from a relinquishment for adoption given to a licensed agency as in the instant case (Civ. Code, § 224m.) A consent may be withdrawn without the agreement of those to whom given (Civ. Code, § 226a), but as seen in the case of the relinquishment, the filing of a certified copy of the relinquishments with the State Department of Social Welfare establishes rights which thereafter cannot be involuntarily withdrawn. The legislative scheme for the placement of relinquished children contemplates that the statutory proceedings will progress unhampered by extrinsic matters and with assurance that proper proceedings may consummate a valid adoption. *(Guardianship of Henwood,* 49 Cal.2d 639, 645-646 [320 P.2d 1].) Manifestly, the rights so established by the filing of the certified copies of the relinquishments are then vested.

Appellants, in seeking to establish that Frederick had legitimated the children, also contend that Jessie's consent to Frederick's acceptance of the children into his home was unnecessary for the reason that Jessie and Frederick, although still married, were permanently separated. (See 2 Armstrong, California Family Law, p. 939.) Section 230 of the Civil Code does not leave room for judical modification thereof in language which provides for legitimation of a child by a father by "receiving it as such, with the consent of his wife, if he is married, into his family." And in *Darwin* v. *Ganger,* 174 Cal.App.2d 63 [344 P.2d 353], it was stated at page 72: "Although the father of a child has lived separate and apart from his lawful wife for years, and has lived continuously with another woman with whom he maintained a settled and fixed home, he cannot legitimize the issue of his

meretricious relationship by a course of conduct otherwise complying with the provisions of Civil Code, section 230. (*Laugenour* v. *Fogg,* 48 Cal.App.2d 848 [120 P.2d 690].)''

The question before the court is fundamentally one of adoptive procedures, and the Legislature has provided extensive provisions therefor. Such provisions must be construed with the view of accomplishing their purpose. (*Adoption of Barnett,* 54 Cal.2d 370, 377-378 [6 Cal.Rptr. 562, 354 P.2d 18].) The purpose may best be accomplished, and the interest of the children best served, by giving continuing effect to those relinquishments which were valid when entered into and filed in the manner heretofore set forth.

As to both appeals herein the judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Mc Comb, J., Peters, J., and Tobriner, J., concurred.