[Civ. Nos. 37449, 38019. Second Dist., Div. Two. Aug. 31, 1971.]

Estate of EMANUEL A. CASIMIR, Deceased.
MELBA L. CASIMIR, Petitioner and Respondent, v.
WALTER H. YOUNG, as Executor, etc., Objector and Appellant.

**COUNSEL**

Walter H. Young, in pro. per., and Young & Young for Objector and Appellant.

Melby & Anderson and Jarrett'S. Anderson for Petitioner and Respondent.

**OPINION**

**COMPTON, J.**—In August of 1966, Emanuel A. Casimir and his wife, Melba L. Casimir, separated. An interlocutory decree of divorce, which ended their marriage, was entered on July 31, 1969.[1]

---

[1]The interlocutory judgment awarded a divorce to both parties. The court did not divide the Casimirs' community property. Instead, the court declared the community property to be "henceforth . . . owned by the parties as equal tenants in common." Melba was awarded one dollar ($1.00) "a year as alimony, payable on the first day of each year, commencing January 1, 1970."

The record indicates that the interlocutory period commenced to run on July 26, 1967.[2] Thus, the final judgment could have been entered immediately.

Six days after the interlocutory decree was entered Emanuel signed the application for the final decree of divorce.[3]

On Friday, August 8, 1969, the signed application was filed with the clerk of the superior court. The next day Emanuel died. On Monday, August 11, 1969, Melba advised the clerk of Emanuel's death and the final decree was not entered.

Upon Emanuel's death, Walter Young was appointed executor of the decedent's estate. The value of the estate amounted to $119,064, which represented one-half of the Casimirs' gross estate. Emanuel bequeathed the entirety of this estate to his mother. The will, which was dated July 24, 1969, specifically directed that "under no circumstances shall [Melba] have any share or right to any part of my estate . . ." Emanuel also disinherited his adult son, Gary.

On February 27, 1970, Melba filed her petition for family allowance. Walter Young, as executor of the estate, filed objections to the petition. On April 22, 1970, the court heard testimony and took evidence. At that time the court was informed by appellant that a special motion had been filed to have the final decree of divorce entered *nunc pro tunc* to ante-date Emanuel's death. The court took judicial notice of the divorce file. On May 26, 1970, the court filed its order for family allowance. Appellant was directed to pay Melba "the sum of $1200.00 for one month commencing August 9, 1969 (date of death) and thereafter the sum of $700.00 per month for eleven months on the ninth day of each month commencing September 9, 1969 until paid in full."

Although appellant requested special findings of fact, none were filed. Appellant also moved for a delay in the signing of the court's order pend-

---

[2]Section 132 of the Civil Code as amended and as applicable at the time of these proceedings, provided that: "When an interlocutory judgment has been entered pursuant to Section 131 and one year has expired from the date of service of copy of summons and complaint upon the defendant spouse, the court on motion of either party, . . . may enter the final judgment granting the divorce, and such final judgment shall restore them to the status of single persons, and permit either to marry after the entry thereof." (Stats. 1965, ch. 1108, p. 2754, § 1.) Section 132 was repealed by Statutes 1969, chapter 1608, page 3313, section 3, operative January 1, 1970, and was substantially reenacted by section 4514 of the Civil Code, Statutes 1969, chapter 1608, page 3326, section 8, operative January 1, 1970.

[3]Melba does not contest the fact that Emanuel's application for the final decree of divorce was timely and otherwise properly filed.

ing determination of appellant's motion for a *nunc pro tunc* entry of the final decree of divorce. That motion was denied.

On June 12, 1970, the Honorable Max Z. Wisot, sitting in another division of the superior court, granted appellant's motion for entry of the final decree of divorce *nunc pro tunc* as of August 4, 1969. The motion had been heard on May 15, 1970, and submitted on June 3, 1970. The court's order was entered on June 29, 1970. Although it is apparent from the record before us that Melba filed a timely appeal from the court's order, that appeal was subsequently dismissed pursuant to rule 10a of the Rules of Court.

On September 30, 1970, a writ of execution for $8,900 (the total sum of support money due under the order for family allowance) was issued. Appellant thereafter filed a motion to quash the writ of execution which was denied.

Walter H. Young, executor of the decedent's estate, appeals from the court's order awarding the family allowance and from the subsequent court order which denied appellant's motion to quash a writ of execution based on that order. These appeals were consolidated.

Appellant purports to appeal from a subsequent denial of appellant's petition to vacate the order granting a family allowance. That order of denial is not an appealable order, (Prob. Code, § 1240; *Estate of Fallon*, 49 Cal.2d 402, 403 [317 P.2d 963]) and will therefore be dismissed.

Appellant raises several points of error. The facts before us, however, frame two threshold issues which prove to be wholly determinative.

Section 680 of the Probate Code provides in pertinent part that upon a man's death his "widow . . . [is] entitled to such reasonable allowance out of the estate as shall be necessary for [her] maintenance according to [her] circumstances, during the progress of the settlement of the estate. . . ." It follows from the express provisions of section 680 that a prerequisite for family allowance is that the claimant be the decedent's widow. (*Estate of Brooks*, 28 Cal.2d 748, 750 [171 P.2d 724].) The initial issue to which we address ourselves is whether the *nunc pro tunc* order entered on June 29, 1970, acted to denude Melba of her status as Emanuel's widow. If the *nunc pro tunc* order was valid then it must be determined what effect that order had on the proceedings from which appellant appeals.

### *The Validity of the Nunc Pro Tunc Order.*

Section 4515 of the Civil Code authorizes *nunc pro tunc* entry of a final decree of divorce. (*Adoption of Graham*, 58 Cal.2d 899, 904 [27 Cal. Rptr. 163, 377 P.2d 275]; *Nicolai* v. *Nicolai*, 96 Cal.App.2d 951, 954

[216 P.2d 913].) Section 4515 provides in pertinent part that "Whenever either of the parties in a [divorce action] is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered, if no appeal has been taken from the interlocutory judgment or motion made for a new trial to annul or set aside the judgment . . . the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. . . . Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to six months after the date of service of a copy of the summons and petition upon, or appearance by, the respondent spouse, as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, such shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof."[4]

■ Although an appeal does not lie from an order granting a motion to enter a judgment *nunc pro tunc*, such an order is reviewable on appeal from the final judgment. (*Waller* v. *Waller*, 3 Cal.App.3d 456, 460 [83 Cal.Rptr. 533].) ■ As between the parties to a divorce the final decree is res judicata "not only of their status with relation to each other but also of all issues that were litigated or that could have been litigated therein." (*Rediker* v. *Rediker*, 35 Cal.2d 796, 801 [221 P.2d 1].)

■ In the instant case Melba filed her notice of appeal from the entry of the final judgment of divorce.

This appeal was dismissed on January 18, 1971, under rule 10a of the California Rules of Court. Since the court had jurisdiction over the subject matter of the divorce action and the parties involved and since no appeal has been perfected "it is not necessary to determine whether the court properly exercised its discretion in making the [*nunc pro tunc*] order." (*Nicolai* v. *Nicolai*, *supra*, at p. 955.) The entry of the final judgment of divorce as of August 4, 1969, is, absent collateral attack, res judicata as to the date of the termination of the Casimirs' marriage.

■ It is true of course that "In the rendition of a judgment a court must remain within its jurisdiction and power. It is the power and authority

---

[4]Section 4515 of the Civil Code substantially reenacted former section 133. (See Stats. 1969, ch. 1608, pp. 3313, 3327, §§ 3, 8.) Since section 4515 was operative as of January 1, 1970, it was the applicable authority for the court's *nunc pro tunc* order. Inasmuch as the pertinent provisions of both sections are identical, case law concerning former section 133 is applicable to the instant case.

behind a judgment rather than the mere result reached which determines its validity and immunity from collateral attack. A judgment, though entered in a case over which the court had jurisdiction over the parties and the subject matter, may be void in whole or in part because it granted some relief which the court had no power to grant. ■ A wrong decision made within the limits of the court's power is error correctable on appeal or other direct review, but a decision which oversteps the jurisdiction and power of the court is void and may be set aside directly or collaterally. [Citations.]" (*Vasquez* v. *Vasquez*, 109 Cal.App.2d 280, 283 [240 P.2d 319].)

■ Since our Supreme Court's decision in *Pacific Mut. Life Ins. Co.* v. *McConnell*, 44 Cal.2d 715 [285 P.2d 636], it has become the general rule that "a final judgment or order is res judicata *even though contrary to statute* where the court has jurisdiction in the fundamental sense, i.e., of the subject matter and the parties." (*Pacific Mut. Life Ins. Co.* v. *McConnell, supra*, at p. 725 (italics added); see also, *Estate of La Motta*, 7 Cal. App.3d 960, 966 [86 Cal.Rptr. 880]; *Farley* v. *Farley*, 227 Cal.App.2d 1, 8 [38 Cal.Rptr. 357]; 1 Witkin, Cal. Procedure (2d ed. 1970) pp. 763-766.)

Recognized exceptions to the general rule were also announced in *Pacific Mut. Life Ins. Co.* v. *McConnell, supra*, at page 727. Thus, "a 'judgment may be collaterally attacked where unusual circumstances were present which prevented an earlier and more appropriate attack.'" (See also: *Estate of La Motta, supra*, at p. 966.)

Assuming without deciding that circumstances in the present case are such as to allow collateral attack on the court's *nunc pro tunc* order we hereafter discuss whether the order was rendered in excess of the jurisdiction reposed in the court by section 4515.

The main purpose of section 4515 is obviously to "validate otherwise void marriages and thus relieve the parties to such marriages from the stigma and other consequences of bigamous relationships into which they might innocently fall by reason of oversight or neglect to have a final decree entered." (*Estate of Hughes*, 80 Cal.App.2d 550, 553 [182 P.2d 253].)

The scope of section 4515 has, however, not been limited to this one purpose. The Supreme Court has noted that, "While the foregoing unquestionably states a most obvious purpose of the statute we are not prepared to hold that the statute serves no other purpose than to validate a later marriage." (*Adoption of Graham*, 58 Cal.2d 899, 904 [27 Cal.Rptr. 163, 377 P.2d 275].)

"The reservation of the *Graham* decision has in turn been recognized

by the Courts of Appeal. In *Price* v. *Price* (1966) 242 Cal.App.2d 705, 709-710 [51 Cal.Rptr. 699]), the court refused to limit section 133 to cases where a later marriage would be thereby validated, and said, 'We see no reason why the law as stated in section 133 of the Civil Code should not apply to every situation which arises subsequent to the date of the *nunc pro tunc* divorce. It is inconceivable to us how a law of this kind could be held to apply to some situations and not to others. Generally speaking, a law enacted without qualification is necessarily universal in effect. Admittedly, this code section constitutes a statutory fiction, but upon its enactment it should be equally applicable to all situations, . . .' " (*Waller* v. *Waller, supra,* at p. 466.)

■ Despite this broad dicta certain constraints have been imposed on the scope of section 4515. Thus, "while [section 4515] is to be liberally construed to effectuate its object, its operation may not destroy a vested right." (*Adoption of Graham, supra,* at p. 904.) Melba argues that to give full effect to the court's order in the present case would improperly divest her of her right to a family allowance.

The protection of "vested" rights envisioned in *Graham* from divestment by a *nunc pro tunc* order must be analyzed in light of the facts of that case. The court held there that parental relinquishments as provided for by section 224m of the Civil Code were made "final and binding" by specific statutory language. Unlike the provisions of section 224m, section 680 does not designate a right "which has become so fixed that it is not subject to be divested without the consent of the owner, . . ." (*Adoption of Graham, supra,* at p. 905, quoting from *Stohr* v. *San Francisco Musical Fund Soc.,* 82 Cal. 557, 560 [22 P. 1125].)

■ It is well established that the right to family allowance granted by section 680 of the Probate Code, while highly favored in the law is not vested. (*Estate of Blair,* 42 Cal.2d 728, 733 [269 P.2d 612].) Thus, the right to family allowance may not be assigned or passed on at death. (*Estate of Blair, supra.*) The right may be lost by conduct prior or subsequent to the decedent's death. (*Estate of Alba,* 238 Cal.App.2d 618, 623-624 [48 Cal. Rptr. 100].)

It is of further import to note that in numerous cases courts have necessarily and inferentially divested "vested" rights of inheritance by authorizing courts to enter final decrees antedating the husband's death. (See *Waller* v. *Waller, supra; Kern* v. *Kern,* 261 Cal.App.2d 325, 332-333 [67 Cal. Rptr. 802]; *Hamrick* v. *Hamrick,* 119 Cal.App.2d 839 [260 P.2d 188]; *Hull* v. *Hull,* 102 Cal.App.2d 382 [227 P.2d 546]; *Estate of Hughes,* 80 Cal.App.2d 550 [182 P.2d 253].)

■ In the case at bar we are involved with a right which is entirely statutory. (*Estate of Blair, supra,* at p. 730.) Section 680 was enacted "out of concern for the needs of the surviving family during the period of readjustment following the death of a spouse. [Citations.] The allowance to meet those needs is preferred to most other claims (Prob. Code, § 750); and upon proper application, it must be granted even if the estate is insolvent. This highly preferential position accorded the family allowance is for the benefit only of persons designated in the statute. [Citation.]" (*Estate of Blair, supra,* at p. 730.)

It follows from these considerations that neither section 680 nor case law so favors the family allowance as to require its extension to women who, but for ministerial technicalities, do not qualify for support. It is clear that section 4515 was enacted with the overriding purpose of avoiding injustice "to a person whose rights are threatened by a delay which is not his fault." (*Hurst* v. *Hurst,* 227 Cal.App.2d 859, 868 [39 Cal.Rptr. 162, 19 A.L.R.3d 635].) In the case at bench Emanuel's express wishes and testate rights embodied in his final will would have been fully protected had the final decree of divorce been filed 24 hours earlier. It is our conclusion that the court acted properly in entering Casimir's final decree of divorce *nunc pro tunc* to August 4, 1969.

The effect of this order was to deprive Melba of the status necessary to qualify her for a family allowance.

### The Effect of the Nunc Pro Tunc Order on the Order for Family Allowance.

■ The issue of Melba's lack of status as Emanuel's widow is res judicata and free from collateral attack. The next issue then is whether she can be collaterally estopped from receiving a family allowance which was otherwise properly granted prior to the *nunc pro tunc* order.[5]

The unique series of events which give rise to this issue are worthy of brief reiteration. On May 26, 1970, the probate court sitting with full jurisdiction over subject matter and parties entered its order for the family allowance. In making its determination the court took judicial notice of the parties' divorce file which at that time disclosed that at Emanuel's death Melba was technically still his wife. More than one month later another division of the same superior court sitting with full jurisdictional power over the parties and the Casimirs' marital status determined that their marriage

---

[5]We assume without deciding that the court did not abuse its discretion in initially awarding the family allowance.

was legally terminated prior to Emanuel's death. As a consequence of the court's *nunc pro tunc* order appellant sought to attack the order for family allowance. This attack took the form of (1) direct appeal from the order for family allowance, (2) motion to quash the writ of execution, and (3) motion to vacate the family allowance. Except for this appeal, appellant was rebuffed. The trial court on the motion to vacate took the position that it was without jurisdiction because of the pending appeal.

Whether this attack on the order for family allowance is technically characterized as "direct" or "collateral" the record vividly reflects "unusual circumstances" which clearly prevented appellant from making an earlier and more appropriate attack on the order for family allowance.

The order denying appellant's motion to quash the writ of execution was erroneously denied as was the order refusing to vacate the family allowance.

The record before the court at the motion to quash as well as the motion to vacate affirmatively showed that Melba had theretofore lost her status as a widow. It necessarily followed that the order for family allowance although otherwise valid prior to June 29, 1970, was thereafter void on its face. At the time of appellant's motion to quash and the motion to vacate, Melba was not a widow and thus ineligible to invoke Probate Code section 680.

While the order of the court refusing to vacate the order for family allowance is itself not appealable, a jurisdictional defect appearing from the record can be reached by the appeal from the order for family allowance. (See *Estate of Poder*, 274 Cal.App.2d 786 [79 Cal.Rptr. 484].)

The Superior Court of Los Angeles County is a single court exercising manifold types of jurisdictions. While the conflicting orders in this case were made by different specialized departments of that court they must be viewed as the action of a single court.

Thus, when the court below decreed that the dissolution of the marriage was final prior to Emanuel's death, it necessarily eliminated the jurisdictional basis upon which its previous order for family support rested and should have contemporaneously quashed the writ of execution and vacated the order for family allowance.

In case No. 38019, the purported appeal filed December 9, 1970 from the order refusing to vacate the order for family allowance is dismissed.

In case No. 37449, the order for family allowance is ordered vacated, and the writ of execution in case No. 38019 based thereon is quashed.

Roth, P. J., and Herndon, J., concurred.