[Civ. No. 44194. Second Dist., Div. Two. May 2, 1975.]

JOAN M. HALL, Plaintiff and Respondent, v.
DEPARTMENT OF ADOPTIONS OF
LOS ANGELES COUNTY, Defendant and Appellant.

## COUNSEL

John H. Larson, County Counsel, and Louis V. Aguilar, Deputy County Counsel, for Defendant and Appellant.

MacCabe & Donaldson and Steven D. Fienberg for Plaintiff and Respondent.

## OPINION

**BEACH, J.—**

### NATURE OF CASE:

Plaintiff, Joan Hall (respondent), signed a form relinquishing the custody of her child to the defendant, County of Los Angeles (appellant), for the purpose of allowing the child to be placed for adoption. She later brought action to set aside her relinquishment. From a judgment in favor of respondent setting aside the relinquishment, the county appeals.

APPELLANT'S CONTENTIONS:

Appellant contends:

1. The trial court erred in overruling appellant's motion for judgment on the pleadings in that (a) the complaint failed to state a cause of action against appellant, and (b) the court failed to require joinder of plaintiff's husband as an indispensable party.

2. The judgment is not supported by substantial evidence.

3. The court failed to make appropriate findings and refused to make specific findings which were requested.

We agree with appellant and we reverse the judgment.

DISCUSSION:

1. *The court erred in denying the appellant's motion for judgment on the pleadings.*

    *(a) Failure to state a cause of action.*

The complaint as originally filed alleged, basically, that respondent was unaware of the consequences of her act of relinquishment because of emotional distress which resulted from abuse by *her husband;* and that she was induced to sign because of duress of *her husband.*

There are no allegations in said complaint charging the appellant with having engaged in any wrongful conduct towards respondent and/or with having participated in any wrongful conduct and/or with having any knowledge that any wrongful conduct had been directed towards respondent to induce her to sign said relinquishment. After filing with the department of health, a relinquishment is final and binding and may be rescinded only by the mutual consent of the adoption agency and the parent or parents relinquishing the child. (Civ. Code, § 224m.)

The Legislature has made detailed and specific provisions for the adoption of minors. The legislative purpose behind this provision is best served and the interests of the child are afforded the greatest recognition by giving continued effect to relinquishments and consents to adoption. (*Adoption of Graham,* 58 Cal.2d 899, 907 [27 Cal.Rptr. 163, 377 P.2d 275].)

Relinquishments, once executed, must be relied upon in order to insure that children will not be forced out of one home and into another at the whims and caprice of emotionally upset and perhaps ill-advised persons. The state has expressed a strong policy in the necessity for giving effect to relinquishments, for to do otherwise would "open the door to practices which could conceivably discourage adopting parents from opening their hearts and homes to unwanted children . . . ." (*Adoption of Laws,* 201 Cal.App.2d 494, 498 [20 Cal.Rptr. 64].)

The complaint charges husband and *not* appellant, County of Los Angeles, with the wrongful conduct.

The pleadings are of generalities at best (if not merely conclusions). Respondent does not clearly and unequivocally allege that she was forced to sign by any threat of her husband. She did not allege that her husband threatened anything at all if she did not sign. She merely set forth reasons for her own desire to have the child adopted and to sign the relinquishment. What is not present and seems to be carefully avoided in the pleadings is any allegation that the husband harmed or abused her or threatened to do so if she did not consent. Assuming for the moment that such fact was reasonably inferable, there was still no allegation that the appellant, County of Los Angeles, was in any way connected with, connived with, or knew of the husband's conduct.

Even under rules permitting rescission of ordinary contracts, respondent's original complaint was insufficient in stating any cause of action against appellant.

■ Duress or fraud of a third party " 'renders a transaction voidable by a party induced thereby to enter into it if the other party . . . has reason to know of the fraud . . . [or duress] before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction. . . .' " (*Leeper* v. *Beltrami,* 53 Cal.2d 195, 206 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803]; see also *Harper* v. *Murray,* 184 Cal. 290 [193 P. 576]; *Carroll* v. *Carroll,* 16 Cal.2d 761 [108 P.2d 420]; Civ. Code, § 1689.)

After appellant's motion for judgment on the pleadings but prior to ruling thereon, the court permitted respondent orally to amend her pleading by adding thereto the following allegation:

"7. Plaintiff was induced to sign said release by the fraud and duress of the department and its agents and employees, including Susan Bronn,

who at all times acted within the scope and authority of her employer, the Department of Adoptions."

■ To allow the amendment was error and even with the additional paragraph the pleading was still insufficient.

It was error in that the pleading was without notice to the appellant as required by section 473, Code of Civil Procedure, which provides in part that the court may "in its discretion, after notice to the adverse party, allow upon such terms as may be just, an amendment to the pleading . . . ."

The amendment was more than mere correction of an obvious mistake, which may be corrected without notice. It was done without notice to appellant and without opportunity to allow reflection and considered response. The amendment occurred at the commencement of trial. ■ More importantly, the pleading was still insufficient. The pleading here concerned a matter of significantly greater importance than, for example, the recovery of an amount of money under a contract. It concerned the conduct of the appellant in its role of carrying out its awesome responsibility to act as a temporary parent for the minor. The pleading charged appellant in general and unspecified terms with "fraud and duress."

■ The general rule with respect to the pleading of a cause of action in fraud and duress is stated in 3 Witkin, California Procedure (2d ed.) section 574: "[F]raud must be specifically pleaded. The effect of this rule is twofold: (a) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged. (b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically) and the policy of liberal construction of the pleadings will not ordinarily be invoked to sustain a pleading defective in any material respect. [Citation.]"

When the serious accusation of fraud is made, it should state specific facts of how and where it occurred. It is bad for courts to allow and lawyers to use vague but artful pleading of fraud simply to get a foot in the courtroom door. It is no answer to say "it will all be resolved at trial" and "the testimony and evidence will tell us what the fraud is."

Respondent asserts that the authorities (citing and quoting 3 Witkin, Cal. Procedure (2d ed.) § 575) indicate that too much attention is given such rule of specific pleading in fraud cases. We will not attempt here to

determine the accuracy of such assertion or the wisdom of laying down a flat rule requiring very detailed pleadings in all cases wherein fraud is alleged. We hold that in the type of circumstances at bench, very definite allegations should be clearly set forth. As this case illustrates, the rule is salutary for if respondent could plead no more than she proved (giving respondent the benefit of all reasonable inferences) and accepting her testimony, the court could have and should have resolved the matter against respondent at the pleading stage. Plaintiff did not prove any case of fraud or duress as we shall discuss below.

The proof at trial did not cure the defects in the pleading. Great care and hesitation should be used in permitting the involuntary removal of a child from the custody, care and control of its parents. In such a case, all uncertainties should be resolved and inferences drawn in favor of the parents keeping the child. That is not the situation here.

In summary, the evidence at trial showed (according to respondent's testimony) that respondent took the child to the adoption agency with the original sole intent of having the child placed in a foster home for a short period of time. However, she did not communicate that express reason or limitation to the adoption agency or anyone else at any time. Respondent's undisclosed intention is insufficient to show fraud or duress. In the matter at bench, respondent herself initiated the entire proceedings. Respondent felt herself unable to care for the child; felt that she would possibly kill the child; telephoned and said "somebody better take this kid;" voluntarily went to the adoption agency and took her child there. Respondent voluntarily signed the relinquishment. The consequences were carefully explained to her. No one told her she had to sign; no one told her that a lawsuit would be brought if she did not sign; no one misrepresented any fact whatsoever to her; no one threatened any bad consequences if she did not sign; no one said or implied that it was wrongful for her not to sign.

If a basic factual and honest summary of the foregoing circumstances had been pleaded rather than a bare conclusion that the appellant had committed fraud, the trial court should have been able to see that there was no cause of action stated. There hopefully would have been prompt resolution of the case.

(b) *The nonjoinder of the natural father.*

The natural father was not named as a party. It was error to allow the matter to proceed without the joinder of the natural father. Here the

action of relinquishment was by both parents. Although the father was a witness and aware of the trial, that fact alone does not warrant the use of procedures which can create more problems than are remedied. There are rights and duties affecting the father that very well may be changed or possibly entirely removed. The fact that respondent did not seek relief against her husband, the father of the child, is not alone determinative. Here the relinquishment was by both parents. Assuming that the relinquishment is declared void, does such result return all parental obligation to both of the natural parents or just to the mother who alone petitioned? Is the father free of the obligation to support? Does the voluntary relinquishment create a valid unilateral abdication of the fatherly duty to support and raise his child? Would the husband consent to having the child returned to its mother alone? Does the father have the right to object to the return to the mother, his former wife? Can he waive his right in favor of appellant or of the proposed adoptive parents? If so, would they stand in the shoes of the husband? If he is not named as a party, are the rights of the adoptive parents completely cut off irrespective of the fact that the father is willing that the adoptive parents should have the child rather than the wife have the child? We need not at this point answer these questions but deem them to be illustrative of the fact that significant issues affecting the obligation of the father existed so that he was an indispensable party in this particular case.

2. *The judgment is not supported by substantial evidence.*

The findings which the court made are not supported by the evidence. Assuming for the moment that the findings are proper in form, the evidence does not support such findings or judgment.

Substantial evidence means evidence which is "of ponderable legal significance. Obviously, the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." (*Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54].)

We have carefully read the entire record and although we do not reweigh the evidence, our review, which we are obligated to make, compels us to conclude that the record is devoid of substantial evidence to support the judgment.

The testimony disclosed that respondent and her husband were twice married to each other and twice divorced. Both marriages were short,

unhappy and turbulent. There was much physical abuse and striking of the spouses by each other and striking of the children. From the first marriage the couple had one child. After the second marriage, Owen, the child involved herein, was born. During the period between the birth of Owen and the signing of the relinquishment, the respondent felt mentally and emotionally distressed because the children were crying all of the time; Mr. Hall was frequently away and did not spend much time with her and the children; she did not have time for herself; and Mr. Hall did not seem to care for the child Owen. She felt confined and closed in and she was afraid of Hall. On several occasions she slapped the baby who was less than two months old at the time. When the child cried she shut him up in the bathroom. She was afraid that she herself would seriously hurt or possibly accidentally kill the child.

On July 5 respondent telephoned the department of adoptions and made an appointment for that same date. That day she and Mr. Hall took the baby, Owen, to the department of adoptions in Inglewood and met with Miss Bronn. During the meeting Owen was undressed and examined and bruises on his body were noticed. At that time the respondent voluntarily left the child with the department which immediately had the child placed in a foster home for care.

On the July 5th meeting and in subsequent telephone conversations and at a meeting on July 10, the matter of adoption was discussed. However, at no discussion was respondent ever told by any agent or employee of appellant or by respondent's husband in the presence of any employee or agent of appellant or at any time by anyone that she, respondent, had to sign or was in any way compelled or obligated to leave the child for adoption. There was absolutely nothing shown in the evidence other than that respondent knew at all times she was free to relinquish or not relinquish the child. Although the testimony shows that respondent was sad and unhappy and at times wavering on her decision to relinquish the child for adoption, the testimony is manifestly clear that the decision was clearly her own and she freely arrived at that decision. The discussions with principally Miss Bronn of the adoption agency indicate nothing more than that Miss Bronn was attempting to give respondent moral courage to do what respondent had indicated she wanted to do, namely, to place the child for adoption. The closest thing to any coercive conduct that is remotely referred to was the statement by respondent *after* she and her husband had signed the relinquishment. During a later conversation with Miss Bronn, respondent stated that she felt that Miss Bronn was "pushing her." However, she did not ask to

have her relinquishment cancelled or to have her child returned to her. However, in response to that Miss Bronn answered that if respondent felt she was being coerced that she, Miss Bronn, would not allow her to sign because Miss Bronn wanted respondent to sign it with a feeling of dignity and of doing the right thing. Miss Bronn further reminded respondent that the only thing that Miss Bronn had stated in previous discussions was the explanation of adoption in detail.

This feeling of being "pushed" was a characterization by respondent of what she had been told. However, absolutely no fact supports that characterization or justifies that attitude in any sense. What took place prior to that remark was simply a full explanation by Miss Bronn. She explained that once the relinquishment was made and the adoption proceedings were underway, it meant that the natural parents had relinquished any right or claim to the child as parents. It was in this explanation that Miss. Bronn further explained that if respondent thereafter should ever ask to have her child returned, it could not be done. However, respondent at no time asked to rescind or cancel the relinquishment or reverse the transaction nor did she ever ask to have her child returned to her.[1] It is understandable that a parent in the position of respondent would wish to unburden herself of the resultant feelings of sadness and possibly remorse or guilt attendant upon such a serious act as relinquishing a child for adoption. However, to distort Miss Bronn's explanations and warning into force and duress by appellant is wholly unjustified and unsupported from the record here.

None of the testimony heretofore recited is evidence that respondent had any mental or emotional disturbance to the extent that she did not know what she was doing or that she did not fully understand and appreciate the nature and consequence of her act or that as a result thereof she was in any way wrongfully or deceitfully persuaded or forced to sign the relinquishment. Respondent's own testimony was that she placed the child for adoption and that she wanted to do so and knew that such was the purpose of taking him to the adoption agency. She so testified at a dissolution of her marriage hearing. Such testimony negated any present claim that respondent lacked the mental capacity fully to understand her act.

3. *The findings.*

■ The findings are unsupported by the evidence and appellant was entitled to further findings as it requested.

---

[1]The starting of the present litigation was the only form of demand.

Finding No. 4 provides that "It is true that Susan Bronn exerted force and duress on plaintiff causing plaintiff to execute said relinquishment."

The record is devoid of any evidence to support such a finding. Appellant requested specific findings on the issues of fraud, force and duress which were denied. Where the court fails to find on material issues with respect to fraud, such failure is error. (*San Jose etc. Title Ins. Co. v. Elliott,* 108 Cal.App.2d 793, 803 [240 P.2d 41].) Here the error is of such significance that it compels reversal.

Section 634 of the Code of Civil Procedure provides that where findings have not been made on all facts necessary to support the judgment, or findings are ambiguous or conflicting, it may not be inferred that the trial court found in favor of the prevailing party on the questioned issues.

Finding No. 5 provides that "It is true that consent obtained from plaintiff for relinquishment was not freely and voluntarily given in that it was partially induced by her distressed state of mind as a result of treatment by her husband and her mental state and emotional disturbance." The record is devoid of substantial evidence to support such finding and such finding is clearly immaterial with respect to appellant unless it can be found that appellant knew or should have known that plaintiff's consent was not freely and voluntarily given. Again appellant requested specific findings on that issue, which request was summarily denied.

Finding No. 6 provides that "It is true that plaintiff's consent was partially induced by fear for the safety of the child, Owen, and was therefore not free and voluntary."

Appellant objected and requested counterfindings with respect to the above in that such findings appear to be directed towards someone other than an employee or agent of appellant; however, appellant's request was summarily denied.

Our discussion above indicates the reason why we believe the findings are not supported by the evidence. We need not belabor the discussion of appellant's contentions on the findings. However, we emphasize one point. We recognize that fraud, force or duress may be exerted by a third party. The third party here would be the husband. However, the act of respondent was her own act. The respondent failed to prove by substantial evidence that her act of relinquishment was not voluntary.

She did not prove that her act was the result of her husband's wrongful persuasion or his threat of harm to herself or child if she did not agree to relinquish the child to appellant. Yet the court concluded that such acts of the husband were partially the cause of respondent's consent, but made no findings supporting that conclusion.

In our opinion, the party against whom a judgment is rendered on the basis of fraud or force or duress is entitled to much more specific findings of fact than those at bench. The party is entitled to know what exact conduct was found to constitute such fraud, force or duress.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.