17 F.3d 1442
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Georgia N. SHIRAR, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, and Irene T. Shirar, Respondents.
 No. 93-3111.
 United States Court of Appeals, Federal Circuit.
 Jan. 10, 1994.
 
 Before NEWMAN, ARCHER, and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 This case involves a dispute between two wives of a deceased federal employee who both claim entitlement to lump sum and annuity death benefits designated for his "widow" under the Civil Service Retirement Systems (CSRS). Georgia N. Shirar petitions for review of the October 29, 1992, decision of the Merit Systems Protection Board (Board), Docket No. SF0831920507-I-1, which reversed the initial decision of the Administrative Judge (AJ), who had sustained a reconsideration decision of the Office of Personnel Management (OPM) affirming the denial of Irene T. Shirar's application for the CSRS benefits payable upon the death of Joseph H. Shirar. Because the Board applied the wrong law to the facts of this case, we reverse and remand
 
 
 2
 * Joseph H. Shirar married Irene in 1943 in Chandler, Arizona. Thereafter, he designated her the beneficiary under the CSRS for the lump sum and annuity benefits payable in the event of his death. On April 1, 1984, Joseph retired under CSRS from his employment with the federal government. At retirement, Joseph elected a survivor annuity for Irene and a correspondingly a reduced annuity for himself. On January 16, 1986, Joseph married Georgia in the Philippines. At that time, Joseph believed his marriage to Irene had been legally terminated by a decree of dissolution entered on September 17, 1985, in the Superior Court of San Diego County, California. Joseph's second marriage took place less than six months after the entry of the decree, but more than six months after February 18, 1985, the day Irene was served with summons and complaint. The judgment of dissolution included a property-settlement agreement giving Irene, among other things, the right to receive one-half of the CSRS retirement benefits payable to Joseph during his life. In March 1988, Joseph designated Georgia--and in the event of her death, his infant son by her--as beneficiary of his CSRS lump sum and annuity death benefits. After Joseph's death on June 30, 1991, Georgia and Irene each claimed entitlement to those benefits as the only surviving spouse and properly designated beneficiary.
 
 II
 
 3
 OPM affirmed its denial of Irene's application for lump sum and annuity benefits in a reconsideration decision, reasoning that the later designation of Georgia as beneficiary prevailed over the earlier designation of Irene, resulting in the denial of lump sum benefits to Irene, and the payment of same to Georgia. With regard to the survivor annuity, OPM noted that "your final divorce decree" terminated Irene's status as Joseph's wife and thus vitiated the surviving spouse election Joseph had made in Irene's favor at his retirement. OPM further noted that neither Joseph nor Irene had availed themselves of the opportunity to provide former spouse annuity benefits for Irene. Finally, OPM noted that Irene had received one-half of Joseph's retirement benefits pursuant to the Superior Court judgment of dissolution and that her right to such payments expired upon Joseph's death.
 
 
 4
 Irene, assisted by counsel, appealed OPM's reconsideration decision. Georgia, pro se, was permitted to intervene. Irene contended that the question who, as between her and Georgia, is the surviving spouse of Joseph is answered by California law. The AJ agreed, citing Money v. OPM, 811 F.2d 1474 (Fed.Cir.1987), a case in which the parties did not dispute that California law supplied the rule of decision.
 
 
 5
 In an effort to prevent ill-considered divorces, Hurst v. Hurst, 39 Cal.Rptr. 162 (Dist.Ct.App.1964), California law creates a cooling-off period by making the initial decree of dissolution interlocutory in nature. It cannot be made final until six months have passed from the time the filing spouse has served the other spouse with summons and complaint. Cal.Civ.Code Secs. 4512 & 4514(a) (West 1983); see In re Frapwell, 125 Cal.Rptr. 878, 880-81 (Ct.App.1975) (citing Estate of Casimir, 97 Cal.Rptr. 623 (Ct.App.1971)). If the other spouse does not contest the dissolution, as was the case here, then the court's entry of the final decree is a purely ministerial act. There is a box on the court's form for uncontested dissolutions allowing the filing spouse simply to write in a date on which the decree will become final, automatically. In this case, however, no date was specified. The notation "reserved" was inscribed in that space, indicating that an appropriate effective date could be supplied at anytime by "noticed motion of either party or on stipulation."
 
 
 6
 Under California law, a rebuttable "presumption as to the validity of a second marriage displaces the presumption as to the continuance of the first relation." Estate of Winder, 219 P.2d 18, 25 (Cal.1950). Irene sought to rebut the presumption favoring Georgia on the grounds that the interlocutory decree entered by the San Diego Superior Court on September 17, 1985, had never been converted into a final decree.
 
 
 7
 At the time of the 1985 San Diego divorce, Joseph was living in the Philippines, and Irene and her counsel were managing the proceedings. Neither Joseph nor Irene individually or by stipulation ever supplied an effective date for the divorce. The AJ made an express finding to that effect. Nonetheless, the AJ held that Irene had not rebutted the presumed validity of the Philippine marriage, because under California law, Joseph, Irene, or any interested person--including Georgia--could have petitioned the Superior Court at any time after August 8, 1985 (six months after service of summons and complaint), for a nunc pro tunc order making the final decree of dissolution effective as of that date. See Cal.Civ.Code Secs. 4513-4514 (West Supp.1993); Hamrick v. Hamrick, 260 P.2d 188 (Cal.1953) (order entered on motion of second wife). The AJ concluded that since Georgia is entitled to such a nunc pro tunc order under California law, Joseph's marriage to Irene was effectively terminated. Therefore, the AJ ruled that Georgia is the surviving spouse for purposes of the CSRS death benefits.
 
 III
 
 8
 Irene petitioned the Board for review of the AJ's initial decision. The Board, following its precedent in Jacobs v. OPM, 13 M.S.P.R. 23, 26 (1982) and citing this court's decision in Money, held that "where competing claims are filed for survivor benefits, the law of the state with the most significant interest in determining the marital status is used to determine who is the legal surviving spouse." The Board, without considering the possible applicability of Philippine law, held that the AJ had erred in concluding that Irene's marriage could be considered terminated under California law, because no effective date for the divorce had been supplied by the parties by motion or on stipulation, or by the entry of a nunc pro tunc order. Consequently, the Board reversed the initial decision and overturned OPM's reconsideration decision. The Board ordered OPM to award survivor benefits to Irene as the legal surviving spouse of Joseph. Assisted by counsel for the first time, Georgia unsuccessfully petitioned the Board for reconsideration, among other things, or the grounds that Philippine law applies, that Georgia's marriage to Joseph was valid under that law, and that in any event, Irene should be estopped from claiming benefits as a surviving spouse after claiming and receiving one-half of Joseph's retirement benefits as his ex-wife.
 
 IV
 
 9
 Georgia petitions for review in this court of the Board's decision. Though notified of Georgia's petition, Irene has elected not to appear before this court, either pro se or through counsel. Irene also knows of OPM's assertion that she is estopped under California law from claiming benefits as a surviving spouse by her receipt of retirement benefits as a divorced spouse.
 
 
 10
 Georgia's argument on appeal begins with the proposition that "[t]he Board erred when it failed to apply the marital law of the Philippines to determine which claimant was the 'surviving spouse.' Under that law, Georgia would have prevailed." For the reasons set forth below, we agree with Georgia's position and, as she thus has an adequate remedy at law, we do not reach the estoppel issue.
 
 V
 
 11
 The Civil Service Retirement Act (CSRA) Amendments of 1948, 5 U.S.C. Sec. 8341(d) (1988) provide that the "widow or widower" of a covered employee "is entitled to an annuity." Section 8342(c) provides that if no beneficiary was properly designated, the "widow or widower" of the employee is also entitled to a lump sum benefit. Section 8341(a)(1) defines "widow" as the surviving "wife" of the employee. That section also uses the words "married" and "marriage."
 
 
 12
 The CSRA does not define the terms "wife," "married," or "marriage." However OPM, the agency charged with administering the statute, has promulgated a regulation defining "marriage" as "a marriage recognized in law or equity under the whole law of the jurisdiction with the most significant interest in the marital status of the employee ... unless the law of that jurisdiction is contrary to the public policy of the United States." 5 C.F.R. Sec. 831.603 (1993) (emphasis added).
 
 
 13
 In this case, the jurisdictions with potentially significant interests in the marital status of Joseph at the time of his death are California and the Philippines. During oral argument before this court, the government asserted that California's sole interest in this matter arises from the fact that one of its residents, Irene, stands to gain from receipt of the death benefits at issue if California law is applied. The government also took the position, however, that under California law, Irene would be equitably estopped from asserting her legal right to benefits as Joseph's sole surviving spouse because she received a share of his retirement annuity as his former spouse. Irene has chosen not to appear before this court to argue that California law does not estop her from claiming the death benefits, thus effectively conceding that point to the government. But according to the government's own position, California can have no real interest in this case because in the final analysis, its resident would not be permitted to collect under California law.
 
 
 14
 The Philippine interest in the outcome of this case includes its concern for its citizen and resident, Georgia, and her infant son. Because California's potential interest is eliminated by the estoppel, the Philippine interest, obviously significant, must prevail. We therefore hold that Philippine law governs the issue of Joseph's marital status. The government does not challenge the proposition that Georgia is the sole surviving spouse of Joseph under Philippine law. Nor does the government contend that Philippine law offends a strong public policy of the United States. Indeed, at oral argument the government conceded that Georgia should prevail if Philippine law is applied.
 
 
 15
 We therefore reverse the decision of the Board and remand the case to the Board, which shall order OPM to award Georgia all survivor benefits as the legal surviving spouse of Joseph H. Shirar.
 
 
 16
 No costs.