[Civ. No. 612. Fifth Dist. June 6, 1966.]

SUSAN DARLENE PRICE, a Minor, etc., et al., Plaintiff and Appellant, v. ROY PRICE, Defendant and Respondent.

---

*Assigned by the Chairman of the Judicial Council.

Di Giorgio, Davis & Nairn, Anthony J. Klein and V. P. Di Giorgio for Plaintiff and Appellant.

King, Eyherabide, Cooney & Owen and Robert E. King for Defendant and Respondent.

CONLEY, P. J.—The answer to the following question must control the outcome of this appeal: does the *nunc pro tunc* date of an interlocutory divorce decree, or the actual calendar date on which it is entered, control the application of the *conclusive presumption* that a child born in wedlock is the issue of the husband?

Plaintiff, born March 25, 1962, sued the defendant, Roy Price, through her guardian ad litem, Vay Vawter (who is also her mother) alleging that he is her father and that he fails and refuses to provide for her support and education; it is alleged that her mother and father were not married to each other at the time of plaintiff's conception, and that the mother was not then married to anyone else; that $350 per month is required for her maintenance and that the defendant has ample means to pay for such support and also reasonable attorney's fees and court costs.

The minor plaintiff had the right, depending upon the true facts, to bring the action for support (Civ. Code, § 196a; 8 Cal.Jur.2d, Bastards, § 24, p. 248; *Pasquale* v. *Pasquale,* 219 Cal. 408 [27 P.2d 76]), including attorney's fees and costs. (*Kyne* v. *Kyne,* 74 Cal.App.2d 563 [169 P.2d 272].)

The complaint was filed June 21, 1965. Thereafter, at the hearing of an order to show cause, plaintiff attempted to in-

troduce evidence on the question of paternity. At the beginning of the hearing it was stipulated that it would be unnecessary for the defendant to object to each question eliciting testimony that he deemed to be improper, and that an objection would be assumed to have been made to any question calling for evidence concerning sexual intercourse between Mrs. Vawter and Mr. Price; it was agreed that the court's ruling could be reserved until the completion of the evidence. At the end of the hearing, the trial court sustained defendant's objection to all evidence in conflict with the statutory conclusive presumption that Floyd Vawter was the father of the plaintiff. Plaintiff had a right to file the appeal which followed. (*Carbone* v. *Superior Court,* 18 Cal.2d 768, 772 [117 P.2d 872, 136 A.L.R. 1260].)

Section 1962, subdivision 5 of the Code of Civil Procedure states:

"Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate, . . ."

Obviously, this conclusive presumption is not effective as to persons who are no longer husband and wife. If the marriage was dissolved legally as of a date prior to the conception of the plaintiff the conclusive presumption that plaintiff is the daughter of Mr. Vawter would no longer apply. As the trial court believed in the applicability of the conclusive presumption, and that the plaintiff should, therefore, be found to be the daughter of Mr. Vawter, there must be a reversal if the court's assumption is incorrect. Floyd Vawter and Vay Vawter were married in Reno, Nevada, in 1937. Notwithstanding the fact that they had three children of their own, serious marital differences developed between them and they separated in March 1960; at that time, Mrs. Vawter obtained an interlocutory decree of divorce in Kern County; however, some months after this decree was acquired, the husband returned to live in the family home, being actuated, according to at least one version, by his desire to raise his children personally; according to the record, Mr. and Mrs. Vawter slept in separate rooms and they did not again have sexual intercourse at any time.

In 1961, Mrs. Vawter became friendly with the defendant, Roy Price; she testified, subject to the objection, that they had sexual intercourse with each other on numerous occasions. She became pregnant with the present minor child, Susan Darlene Price, who was born March 25, 1962. The interlocutory decree

of divorce was entered March 23, 1960, and, after the filing of the required affidavits, either party was entitled to obtain a final decree of divorce on March 24, 1961. The final decree was actually secured on July 29, 1965, but it was entered *nunc pro tunc* as of March 24, 1961. Admittedly, the conception of the plaintiff took place after the *nunc pro tunc* date of the final decree of divorce but before the actual date of its signing and filing.

The record establishes by uncontradicted evidence that Mr. Vawter was not sterile or impotent.

■ The Supreme Court has recently defined the connotation of ''cohabiting'' as used in subdivision 5 of section 1962 of the Code of Civil Procedure. Its meaning, as carefully analyzed in the opinion of Mr. Justice Dooling in *Kusior* v. *Silver*, 54 Cal.2d 603, 611 [7 Cal.Rptr. 129, 354 P.2d 657], is the dwelling together of husband and wife in family quarters: ''Taken together, the *Mills* [*Estate of Mills*, 137 Cal. 298 (70 P. 91, 92 Am.St.Rep. 175)] and *Walker* [*Estate of Walker*, 176 Cal. 402 (168 P. 689) and 180 Cal. 478 (181 P. 792)] cases clearly limited the application of the conclusive presumption of section 1962, subdivision 5, to cases where the parties were 'living together . . . ostensibly as husband and wife' (*Mills*) or 'living together in the same house or apartments' (*Walker*) and in all other cases applied only the rebuttable presumptions.''

Appellant's contention that two people are not ''living together as husband and wife,'' even if using the same house or apartment and carrying on most of the usual activities of a family home, if they have abandoned the practice of sexual intercourse as between them, cannot be upheld in view of the analysis and discussion in the *Kusior* case, *supra*.

Similarly, the argument of appellant that this conclusive presumption is violative of the rights of the plaintiff under the Fourteenth Amendment to the United States Constitution (*Wareham* v. *Wareham*, 195 Cal.App.2d 64 [15 Cal.Rptr. 465]; *Heiner* v. *Donnan*, 285 U.S. 312 [52 S.Ct. 358, 76 L.Ed. 772]; *Schlesinger* v. *Wisconsin*, 270 U.S. 230 [46 S.Ct. 260, 70 L.Ed. 557, 43 A.L.R. 1224]) cannot be approved by this court in view of the pronouncement to the contrary in *Kusior* v. *Silver, supra*, 54 Cal.2d 603, 619.

Section 133 of the Civil Code reads as follows: ''Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered,

if no appeal has been taken from the interlocutory judgment or motion made for a new trial to annul or set aside the judgment or for relief under Chapter 8, Title 6 of Part 2 of the Code of Civil Procedure, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. The court may cause such final judgment to be signed, dated, filed and entered nunc pro tunc as aforesaid, even though a final judgment may have been previously entered where by mistake, negligence or inadvertence the same has not been signed, filed or entered as soon as it could have been entered under the law if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof.''

 This code section was followed in the divorce case by dating the final decree of divorce nunc pro tunc as of March 24, 1961, and it would seem requisite that its effect should be as provided by the terms of the code section. Since the conception of the plaintiff admittedly took place after the nunc pro tunc date of the final judgment of divorce, the conclusive presumption of Mr. Vawter's paternity would not apply.

In opposition to this view of the law, it is contended by the respondent that the effect of the code section is limited to those cases where a second marriage has taken place after the date when a final judgment of divorce could have been entered and that the whole purpose, intent and function of the nunc pro tunc final decree of divorce is to protect second wives and husbands who married a second time under the assumption that they were finally divorced from their first wives when a year elapsed after the interlocutory decree. This viewpoint, however, is not accepted by the Supreme Court which held in *Adoption of Graham*, 58 Cal.2d 899, at page 904 [27 Cal.Rptr. 163, 377 P.2d 275] : ''While the foregoing unquestionably states a most obvious purpose of the statute we are not prepared to hold that the statute serves no other purpose than to validate a later marriage. In differ-

ent and proper circumstances it might well serve to legitimate children *and to establish* parent-child status even in the absence of such a marriage." (Italics ours.) █ We see no reason why the law as stated in section 133 of the Civil Code should not apply to every situation which arises subsequent to the date of the *nunc pro tunc* divorce. It is inconceivable to us how a law of this kind could be held to apply to some situations and not to others. Generally speaking, a law enacted without qualification is necessarily universal in effect. Admittedly, this code section constitutes a statutory fiction, but upon its enactment it should be equally applicable to all situations, including, in our judgment, the present one.

█ We conclude, therefore, that the learned trial judge was mistaken in believing that the *nunc pro tunc* date of the final decree of divorce was immaterial insofar as the application of the conclusive presumption of paternity to the facts of the present litigation is concerned.

Needless to say, we do not, in any way, purport to pass on the ultimate merits of the claim made by the plaintiff that Roy Price is her father. If, in fact, the defendant was responsible for plaintiff's conception and birth, he should pay a reasonable amount for her upkeep and education as well as necessary attorney's fees and costs. (Civ. Code, § 196a; 8 Cal. Jur.2d, Bastards, § 5, pp. 214-217.) This is in line with the old saying expressing the wisdom of the people, "He who dances must pay the fiddler." Mrs. Vawter asserted on the witness stand that Roy Price was the father of the child. With equal vehemence, he denied the paternity. It is for the trial court to determine from the facts, unencumbered by the conclusive presumption, whether Roy Price is responsible.

The judgment is reversed.

Stone, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied July 5, 1966, and respondent's petition for a hearing by the Supreme Court was denied August 17, 1966.

---

*Assigned by the Chairman of the Judicial Council.