Opinion
 

 DIBIASO, J.
 

 We hold that the trial court in a marital dissolution action is empowered to enter a judgment nunc pro tunc with respect to all issues, including marital status, submitted to the court for decision prior to the death of a party to the proceeding, notwithstanding the general rule that such a death abates a cause of action for termination of status.
 

 Procedural History
 

 On October 25, 1985, respondent Iva Jean Mallory (Iva) filed a petition for dissolution of her 11-year marriage to Herbert Dean Mallory (Herbert).
 
 *1168
 
 The petition asked the superior court to end the marriage of the parties, confirm their separate properties, and divide their community property. Herbert filed his response to the petition on November 25, 1985; he asked for dissolution of the marriage and for the resolution of property issues.
 

 On October 29, 1987, trial of the action commenced. The last of the written arguments of the parties was filed not later than January 5, 1988.
 
 [1]
 
 The case was submitted for decision on that date.
 

 On April 25, 1988, at 8:50 a.m., Herbert was found dead in his home. At 3 p.m. on the same day, the trial court entered a minute order dissolving the marriage and deciding the property issues. Notice of the ruling was given by the clerk of the court on April 26, 1988.
 

 On June 7, 1988, Herbert’s former lawyer and Iva’s attorney stipulated in writing that (1) the trial court’s jurisdiction to issue a decision or a judgment terminated upon the death of Herbert and (2) the trial court’s minute order of April 25, 1988, was “null and void.”
 

 Appellant Dan Mallory is the executor named in Herbert’s will. On July 7, 1994, appellant filed a motion to substitute himself into the dissolution action as the real party in interest, to set aside the stipulation, to confirm the findings and order of the trial court, and to enter a judgment nunc pro tunc as of a date prior to Herbert’s death. Iva apparently opposed the motion, although her opposition papers are not a part of our record.
 

 After hearing and argument, the trial court entered a minute order on August 18, 1994, which (1) substituted appellant in place of Herbert in the action; (2) set aside the June 7, 1988, stipulation on the ground that Herbert’s former attorney had no authority to execute it; (3) denied appellant’s request for entry of judgment nunc pro tunc; and (4) directed that a judgment conforming to the trial court’s April 25, 1988, minute order be entered as of August 18, 1994.
 
 [2]
 
 The judgment was filed on August 18, 1994, and entered on September 7, 1994. It provided in part that the marriage of Herbert and Iva was dissolved as of August 18, 1994.
 

 On November 18, 1994, Iva moved for an order setting aside the trial court’s August 18, 1994, order and the judgment entered on September 7,
 
 *1169
 
 1994, on the ground the judgment was void. Appellant opposed the motion and noticed his own countermotion for an order reentering the judgment nunc pro tunc as of a date before Herbert’s death. The two motions were argued and submitted on February 23, 1995.
 

 On March 3, 1995, the trial court filed a minute order which granted Iva’s motion to set aside the September 7, 1994, judgment and denied appellant’s motion to enter the judgment nunc pro tunc. This appeal is taken from the trial court’s formal order, entered on October 25, 1995, incorporating the minute order rulings.
 

 Discussion
 

 I.
 
 Appealable
 
 Order
 
 *
 

 II.
 
 Merits
 

 A.
 
 Introduction
 

 Appellant contends the trial court erred by granting Iva’s motion to vacate the September 7,1994, judgment and denying his motion to enter that judgment nunc pro tunc as of a date prior to Herbert’s
 
 [3]
 
 Appellant relies principally upon section 669 of the Code of Civil Procedure and section 2346 of the Family Code.
 
 [4]
 

 Iva counters that the 1988 judgment was void, and thus properly vacated, because the trial court lost jurisdiction over the action at the moment Herbert died, several hours before the trial court entered its minute order decision. She cites the general rule that an action for marital dissolution abates at the death of a party
 
 (In re Marriage of Williams
 
 (1980) 101 Cal.App.3d 507, 510 [161 Cal.Rptr. 808]). She also relies on the notion, found in a number of Court of Appeal opinions decided during the past 30 or so years, that “[u]pon the death of a party to a marriage dissolution or divorce proceeding, the court retains the power to enter judgment in conformity with matters
 
 adjudicated
 
 before the death[, but] it can make no further
 
 adjudication
 
 of issues.”
 
 (Id.
 
 at p. 511, italics added.) As we read her argument, Iva assumes
 
 *1170
 
 the word “adjudicated” in this statement means some on-the-record expression by the trial court of a decision to rule in a particular way in the case.
 
 [5]
 

 B.
 
 Entry of Judgment
 

 Section 669 reads in relevant part: “If a party dies after trial and submission of the case to a judge sitting without a jury for decision . . . and before judgment, the court may nevertheless render judgment thereon.”
 

 Section 669 was enacted in 1872. Until 1965, it provided that if a party died “after a . . . decision” but before judgment, the trial court could still render judgment.
 
 (Kellogg
 
 v.
 
 Asbestos Corp. Ltd.
 
 (1996) 41 Cal.App.4th 1397, 1404 [49 Cal.Rptr.2d 256].) In 1965, the statute was amended to substantially its present form. (Stats. 1965, ch. 1636, § 1, p. 3730.) “The policy behind section 669 was that if the parties had done everything they could to put the case in a posture where it was ready for final rendition of judgment, a court delay should not be used to prejudice the parties.”
 
 (Kellogg
 
 v.
 
 Asbestos Corp. Ltd., supra,
 
 41 Cal.App.4th at pp. 1404-1405.)
 

 The language of the statute is unambiguous. The death of a party does not deprive the trial court of the power to enter a judgment so long as the case was submitted for decision before the party died. A case is “submitted” on the date when “either of the following first occurs: (1) . . . the court orders the matter submitted; or (2) . . . the final paper is required to be filed or . . . argument is heard, whichever is later." (Cal. Rules of Court, rule 825(a);
 
 Social Service Union
 
 v.
 
 County of Monterey
 
 (1989) 208 Cal.App.3d 676, 680 [256 Cal.Rptr. 325].)
 

 Section 669 applies to marital dissolution actions. The “rules of practice and procedure applicable to civil actions generally apply to, and constitute the rules of practice and procedure in,” family law proceedings, “[e]xcept to the extent that any other statute or rules adopted by the Judicial Council provide applicable rules." (Fam. Code, § 210.) We have not found any statute or rule which puts any part of a dissolution action, including the issue of the parties’ marital status, beyond the reach of section 669.
 
 [6]
 
 In
 
 In re Marriage of Shayman
 
 (1973) 35 Cal.App.3d 648, 651-652 [111 Cal.Rptr. 11], the court assumed section 669 applied to marital dissolution actions.
 

 Furthermore, section 669 is not the superior court’s only source of authority to enter judgment after the death of a party to a pending action. The
 
 *1171
 
 Supreme Court held as early as 1895 that a trial court has the independent, inherent power to make findings and enter judgment when a party dies after submission of the case, and to do so nunc pro tunc as of a date before the death. In
 
 Fox
 
 v.
 
 Hale & Norcross S. M. Co.
 
 (1895) 108 Cal. 478 [41 P. 328], one of the defendants died after the evidentiary and argument phases had been completed, and after the trial court had announced its conclusions and directed the preparation of findings and a judgment, but before the trial court had settled and entered its findings. The Supreme Court upheld the trial court’s order that the findings and judgment adopted after the defendant’s death be entered nunc pro tunc as of a date prior to the death.
 
 (Id.
 
 at p: 482.)
 

 Fox
 
 was reaffirmed in
 
 Norton
 
 v.
 
 City of Pomona
 
 (1935) 5 Cal.2d 54, 57-58 [53 P.2d 952], a negligence case involving the collision of an automobile with a power pole. The action was tried by the court without a jury.
 
 (Ibid.)
 
 The plaintiff died after all the evidence and briefs had been submitted and the trial court had entered a minute order expressing its intention to enter judgment in favor of the defendant. Following the plaintiff’s death, the trial court made formal findings of fact and conclusions of law and ordered them filed nunc pro tunc as of the date of the minute order.
 
 (Id.
 
 at p. 57.) The Supreme Court, relying upon
 
 Fox
 
 v.
 
 Hale & Norcross S. M. Co., supra,
 
 108 Cal. 478, and
 
 Leavitt v. Gibson
 
 (1935) 3 Cal.2d 90 [43 P.2d 1091], approved the trial court’s actions. (5 Cal.2d at p. 63.)
 

 In both
 
 Fox
 
 and
 
 Norton
 
 the trial court had disclosed, before the party died, the identity of the litigant in whose favor the court intended to rule. Nevertheless, the announcement of a decision, even a tentative one, is not critical to the trial court’s inherent power to render judgment notwithstanding the death of a party. In
 
 Leavitt
 
 v.
 
 Gibson, supra,
 
 3 Cal.2d 90, one of the authorities relied upon by the
 
 Norton
 
 court, a defendant died before the case was formally submitted. However, all the evidence had been heard and both sides had rested. The plaintiff’s opening brief and the defendants’ reply brief, but not the plaintiff’s closing brief, had been filed and served.
 
 (Leavitt, supra,
 
 3 Cal.2d at p. 105.) The trial court nevertheless went ahead and made findings of fact and conclusions of law and ordered them to be filed nunc pro tunc as of the day after the close of the evidentiary phase of the trial.
 
 (Id.
 
 at p. 94.)
 

 The Supreme Court affirmed. It did not mention that section 669 then authorized entry of judgment only if the party died “after a . . . decision.” Comparing the facts in
 
 Fox
 
 with the facts before it, the
 
 Leavitt
 
 court concluded: “ ‘On the day of [the defendant’s] death the court was in a position to have ordered the case submitted although it had not actually made such order. The bill of exceptions does not show that any stipulation or
 
 *1172
 
 order for extending time for such reply brief had been made. ... In view of the facts thus shown by the record we have reached the conclusion that there is no substantial difference between the situation presented by this case with respect to the question now under consideration and that presented in
 
 [Fox
 
 and
 
 In re Estate of Pillsbury
 
 (1917) 175 Cal. 454 (166 P. 11,3 A.L.R. 1396)] to which we have referred. The delay which had occurred (at the time of [the defendant’s] death) may well have been caused by “the intricacy of the questions involved”, as by any cause attributable to the laches of the parties. So, in relation to the right of the trial court to have its decision filed as of [the day after the evidence was presented], we think that such right should be upheld, and that “the principle upon which its action is to be sustained is that justice may be done between the parties”.’ ”
 
 (Leavitt
 
 v.
 
 Gibson, supra,
 
 3 Cal.2d at p. 105; see also
 
 Collison
 
 v.
 
 Thomas
 
 (1961) 55 Cal.2d 490, 495 [11 Cal.Rptr. 555, 360 P.2d 51];
 
 Williamson
 
 v.
 
 Plant Insulation Co.
 
 (1944) 23 Cal.App.4th 1406, 1417 [28 Cal.Rptr.2d 751].)
 

 A recent reference to
 
 Fox, Norton,
 
 and section 669 appears in
 
 Kellogg
 
 v.
 
 Asbestos Corp. Ltd., supra,
 
 41 Cal.App.4th at pages 1404-1405. The Court of Appeal in
 
 Kellogg
 
 held it was proper for the trial court to enter judgment in a negligence action even though the plaintiff died five days after the case had been submitted for decision but before the trial court had announced a tentative decision.
 
 {Id.
 
 at pp. 1401-1402, 1404.)
 

 Subsequent Supreme Court opinions do not undercut
 
 Fox, Norton
 
 or
 
 Leavitt,
 
 or require us to impart a meaning to the current version of section 669 inconsistent with its literal language. The latest Supreme Court decision involving the death of party to a marital dissolution action is
 
 In re Marriage of Hilke
 
 (1992) 4 Cal.4th 215 [14 Cal.Rptr.2d 371, 841 P.2d 891]. In
 
 Hilke,
 
 one of the spouses died after entry of a stipulated order bifurcating the proceeding, terminating the parties’ marital status, and reserving jurisdiction over all other issues. Thereafter, the trial court, exercising its reserved jurisdiction, applied the presumption in former Civil Code section 4800.1 and found that certain real property held by the parties in joint tenancy was community property. The Court of Appeal reversed, “reasoning that the wife’s death intervened before that statute could be applied, so that the husband’s right of survivorship as a joint tenant prevailed.” (4 Cal.4th at p. 218.)
 

 The Supreme Court reversed the Court of Appeal, and stated at one point in its opinion that “[t]he death of one of the spouses abates a cause of action for dissolution, but does not deprive the court of its retained jurisdiction to determine collateral property rights if the court has previously rendered judgment dissolving the marriage.”
 
 (In re Marriage of Hilke, supra, 4
 
 Cal.4th
 
 *1173
 
 at p. 220.) The Supreme Court cited two cases for this proposition,
 
 Mc-Clenny
 
 v.
 
 Superior Court
 
 (1964) 62 Cal.2d 140, 144 [41 Cal.Rptr. 460, 396 P.2d 916], and
 
 Kinsler
 
 v.
 
 Superior Court
 
 (1981) 121 Cal.App.3d 808 [175 Cal.Rptr. 564]. The Supreme Court also distinguished
 
 Estate of Blair
 
 (1988) 199 Cal.App.3d 161 [244 Cal.Rptr. 627], where the presumption of section 4800.1 was not applied, because in
 
 Blair
 
 “. . .
 
 the wife died before the entry of any judgment respecting the parties’ marital status.” (Hilke
 
 at p. 221, italics in original.)
 

 We do not read
 
 Hilke
 
 as authority for the proposition that the death of a party to a marital dissolution action deprives the trial court of the power to enter judgment even though the issues, including marital status, were submitted before the party died. Neither section 669 nor the trial court’s inherent power, as described in
 
 Fox, Norton
 
 and
 
 Leavitt,
 
 was in issue in
 
 Hilke,
 
 and none of the pertinent opinions referred to in
 
 Hilke—McClenny, Kinsler
 
 and Blair—support a withdrawal from
 
 Fox, Norton
 
 or
 
 Leavitt.
 

 In
 
 McClenny
 
 v.
 
 Superior Court, supra,
 
 62 Cal.2d at page 142, an interlocutory judgment granted the wife a divorce on the basis of extreme cruelty, entitling her to more than one-half the community property.
 
 {Id.
 
 at p. 143.)
 
 [7]
 
 However, the wife died before the property was divided. The Supreme Court held that the wife’s death did not divest the trial court of jurisdiction to enforce the property rights “adjudicated” by the interlocutory decree.
 
 {Id.
 
 at pp. 144-146.) In part, the Supreme Court said: “In the instant situation the death of one of the spouses occurred in the interval between the rendition of the interlocutory decree and the enforcement of the property rights adjudicated in that decree; the death intervened before the court had allocated the community property of the parties. [<U Although the death of one of the spouses in such a case abates the divorce action, the abatement relates to the status of the parties and not to the property rights theretofore adjudicated. The death destroys the cause of action for the dissolution of the marriage; it does not liquidate the property rights which crystallized in the interlocutory decree.”
 
 (McClenny
 
 v.
 
 Superior Court, supra,
 
 62 Cal.2d at p. 144.)
 

 This statement suggests that the death of a spouse subsequent to entry of a judgment covering both status and property rights operates to revoke that aspect of the judgment which ended the marital relationship.
 
 [8]
 
 We question the notion that the spouse’s death canceled the prior status judgment as well
 
 *1174
 
 as the concept that one spouse’s right to a greater share of the community property, which then depended upon a judgment severing the marital status on the grounds of extreme cruelty, survived the invalidation of the judgment severing the marital
 
 [9]
 

 However, whatever ambiguity may exist in
 
 McClenny
 
 was resolved by
 
 Hilke.
 
 As we noted, the
 
 Hilke
 
 court cited to
 
 McClenny
 
 as authority for the proposition that “[t]he death of one of the spouses abates a cause of action for dissolution, but does not deprive the court of its retained jurisdiction to determine collateral property rights
 
 if the court has previously rendered judgment dissolving the marriage.'” (In re Marriage of Hilke, supra,
 
 4 Cal.4th at p. 220, italics added.) We think the
 
 Hilke
 
 court’s articulation of the principle for which
 
 McClenny
 
 was cited effectively retracts any implication in
 
 McClenny
 
 that a judgment dissolving the status of the parties’ marriage is annulled by the later death of a party.
 

 The other two opinions mentioned in
 
 Hilke
 
 are also not determinative. In
 
 Kinsler
 
 v.
 
 Superior Court, supra,
 
 121 Cal.App.3d 808, the decision cited with
 
 McClenny,
 
 the trial court entered interlocutory and final judgments of dissolution before the death of one of the parties; the interlocutory judgment had reserved jurisdiction over the property issues. The appellate court held that the trial court had jurisdiction to render a postdeath judgment on the reserved issues. In
 
 Estate of Blair, supra,
 
 199 Cal.App.3d at page 166, the opinion the
 
 Hilke
 
 court distinguished, there is no indication that the parties to the related dissolution action had tried or submitted any issue to the trial court before the death of one of the spouses.
 

 Finally, there is an early case,
 
 Kirschner
 
 v.
 
 Dietrich
 
 (1895) 110 Cal. 502 [42 P. 1064], which likewise is not at odds with section 669 or
 
 Fox, Norton
 
 and
 
 Leavitt. Kirschner
 
 involved the death of a party to a marital dissolution
 
 *1175
 
 action after the court entered a judgment terminating the marital status but not reserving jurisdiction as to any other issue. The Supreme Court held that the representative of the deceased party could not intervene to raise matters concerning the disposition of the marital property. (110 Cal. at p. 504.)
 

 In our case, the trial court withdrew its September 7, 1994, judgment because it concluded that Herbert’s death abated the action and deprived the court of jurisdiction to enter judgment with respect to any of the issues submitted to it for decision on January 5, 1988. For all the reasons we have expressed, we find that the trial court was authorized to decide all these issues, including status, and to enter a conforming judgment notwithstanding Herbert’s death on April 25, 1988. We will therefore vacate the trial court’s order nullifying the 1994 judgment.
 

 Our decision may appear to be inconsistent with those intermediate appellate cases, many cited by Iva, which say the trial court retains power to enter judgment in a dissolution proceeding only as to the issues “adjudicated” or “decided” before the date of death of the deceased party. We will not spend time extensively examining each of these opinions. Even if they contradict the result we have arrived at, we would not be inclined to follow them because they contravene both the unambiguous language of the current version of section 669 and the Supreme Court’s opinions in
 
 Fox, Norton,
 
 and
 
 Leavitt.
 
 In point of fact, however, none of the cases are contrary to either the statute or the opinions. (See
 
 In re Marriage of Lisi
 
 (1995) 39 Cal.App.4th 1573, 1576 [46 Cal.Rptr.2d 623] [trial court had jurisdiction to determine the amount of an attorney’s fee award where the “order determining the right to attorney fees was made prior to the death of [a party], but the court postponed the determination of the amount of reasonable fees to the date of trial”];
 
 Estate of Blair, supra,
 
 199 Cal.App.3d 161, 166 [no indication the parties in the dissolution action had tried or submitted any issues for decision before the death of the spouse];
 
 Kinsler
 
 v.
 
 Superior Court, supra,
 
 121 Cal.App.3d 808 [trial court had power to decide property issues after death of spouse where interlocutory and final judgments dissolving the status of the marriage and reserving jurisdiction as to property issues were entered before death];
 
 In re Marriage of Williams, supra,
 
 101 Cal.App.3d 507 [no indication parties had tried or submitted any issue before one of them died; case involved motion by relative of deceased spouse to join in a dissolution action in order to contest the surviving spouse’s motion for custody of the children of the marriage];
 
 Newhall
 
 v.
 
 Melone
 
 (1962) 199 Cal.App.2d 121, 124 [18 Cal.Rptr. 476] [trial court properly fixed attorney fees after the death of a party to a marital dissolution action because right to such fees had been adjudicated before death].)
 

 Furthermore, we have not found any other appellate opinion which persuades us to adopt the position taken by Iva. (See
 
 In re Estate of Layton
 
 
 *1176
 
 (1996) 44 Cal.App.4th 1337, 1339 [52 Cal.Rptr.2d 251] [interlocutory and final judgments dissolving marital status entered before death of spouse; interlocutory judgment reserved jurisdiction over community property issues];
 
 In re Marriage of Allen
 
 (1992) 8 Cal.App.4th 1225, 1228-1229 [10 Cal.Rptr.2d 916] [marital status was bifurcated and judgment of dissolution reserving all other issues was entered prior to the party’s death; trial court had authority to decide reserved issues after party’s death];
 
 In re Janette H.
 
 (1987) 196 Cal.App.3d 1421 [242 Cal.Rptr. 567] [Virginia court order awarding custody of a minor to the mother, subject to the rights of the deceased father’s companion to visitation, was valid because at the time the petition for custody was filed in Virginia no action was pending in California; no suggestion that trial and submission of any issue in the California dissolution action had occurred before the father died];
 
 In re Marriage of Shayman, supra,
 
 35 Cal.App.3d at pp. 651-652 [trial court authorized to enter judgment where party died after court had filed findings of fact and conclusions of law];
 
 McClellan
 
 v.
 
 McClellan
 
 (1972) 23 Cal.App.3d 343, 349-351 [100 Cal.Rptr. 258] [interlocutory judgment of divorce entered which reserved jurisdiction as to other issues; death of a party during trial of the remaining issues did not abate action as to the reserved issues];
 
 Kern
 
 v.
 
 Kern, supra,
 
 261 Cal.App.2d 325 [interlocutory judgment entered; former Civ. Code, §§ 132 & 133 (now Fam. Code, § 2346) authorized trial court to enter final judgment of divorce nunc pro tunc after spouse’s death];
 
 Poon
 
 v.
 
 Poon
 
 (1966) 244 Cal.App.2d 746, 751-752 [53 Cal.Rptr. 365] [death of party
 
 during
 
 trial of dissolution action abated the action and deprived trial court of power to enter decree of divorce];
 
 Bevelle
 
 v.
 
 Bank of America
 
 (1947) 80 Cal.App.2d 333, 334-335 [181 P.2d 730] [trial court had no power to fix attorney fees where the right to such fees had not been determined prior to a party’s death; no indication that issue had been submitted to court for decision before the death];
 
 Darter
 
 v.
 
 Magnussen
 
 (1959) 172 Cal.App.2d 714, 718 [342 P.2d 528] [interlocutory judgment of dissolution, entered on basis of extreme cruelty, included property award; death of wife abated action but trial court had jurisdiction to enforce rights established by interlocutory decree].)
 

 C.
 
 Nunc Pro Tunc
 

 We have concluded that a trial court has both the inherent and the statutory power in a marital dissolution action to enter a judgment on all issues submitted to the court for decision before the death of a party. We shall now also conclude that the trial court under such circumstances has the inherent power with respect to all issues, and the statutory power with
 
 *1177
 
 respect to the termination of marital status, to enter a judgment nunc pro tunc as of a date preceding the date of death of the party.
 
 [10]
 

 We touched upon the court’s inherent power in our earlier analyses of
 
 Fox, Norton,
 
 and
 
 Leavitt.
 
 An expanded comment on the subject is found in
 
 Norton
 
 v.
 
 City of Pomona, supra,
 
 5 Cal.2d 54, 62-63: “ ‘The power to enter judgments
 
 nunc pro tunc
 
 is inherent in the courts .... Such an order should be granted or refused as justice may require in view of the circumstances of a particular case .... [The pre-1965 version of section 669, which provides for entry of judgment if a party died after a . . . decision, does not] do away with the rule that authorizes the court to direct that its decision, so far as the same shall be necessary to protect the rights of the parties, shall be entered
 
 nunc pro tunc
 
 as of a day anterior to the death of a party.’ ” (See also
 
 Phillips
 
 v.
 
 Phillips
 
 (1953) 41 Cal.2d 869, 875 [264 P.2d 926];
 
 Williamson
 
 v.
 
 Plant Insulation Co., supra,
 
 23 Cal.App.4th at p. 1415.)
 

 The trial court’s express statutory power to backdate a judgment of dissolution of marriage is found in Family Code section 2346. This section reads as follows:
 

 “(a) If the court determines that a judgment of dissolution of the marriage should be granted, but by mistake, negligence, or inadvertence, the judgment has not been signed, filed, and entered, the court may cause the judgment to be signed, dated, filed, and entered in the proceeding as of the date when the judgment could have been signed, dated, filed, and entered originally, if it appears to the satisfaction of the court that no appeal is to be taken in the proceeding or motion made for a new trial, to annul or set aside the judgment, or for relief under Chapter 8 (commencing with Section 469) of Title 6 of Part 2 of the Code of Civil Procedure.
 

 “(b) The court may act under subdivision (a) on its own motion or upon the motion of either party to the proceeding. In contested cases, the motion of a party shall be with notice to the other party.
 

 “(c) The court may cause the judgment to be entered nunc pro tunc as provided in this section, even though the judgment may have been previously entered, where through mistake, negligence, or inadvertence the judgment was not entered as soon as it could have been entered under the law if applied for.
 

 
 *1178
 
 “(d) The court shall not cause a judgment to be entered nunc pro tunc as provided in this section as of a date before trial in the matter, before the date of an uncontested judgment hearing in the matter, or before the date of submission to the court of an application for judgment on affidavit pursuant to Section 2336. Upon the entry of the judgment, the parties have the same rights with regard to the dissolution of marriage becoming final on the date that it would have become final had the judgment been entered upon the date when it could have been originally entered.” (Fam. Code, § 2346.)
 

 Family Code section 2346, effective January 1, 1994, continues former Civil Code section 4513 without substantive change. (Cal. Law Revision Com. com., reprinted in 29C West’s Ann. Fam. Code (1994 ed.) foil. § 2346, p. 666.) Former Civil Code section 4513 was enacted in 1969, and amended several times between 1969 and 1989. (Stats. 1969, ch. 1608, pp. 3326-3327; Stats. 1983, ch. 1159, §4, pp. 4383-4384; Stats. 1985, ch. 96, §1, pp. 231-232; Stats. 1985, ch. 106, § 10, pp. 257-258; Stats. 1989, ch. 1266, § 1, pp. 4994-4995.)
 
 [11]
 
 It derived from former Civil Code section 131.5.
 
 [12]
 
 (Historical Note, 12A West’s Ann. Civ. Code,
 
 supra,
 
 foil, former Civ. Code, §4513.) The version of former Civil Code section 4513 in effect during
 
 *1179
 
 1987 and 1988 was virtually identical to the current version of Family Code section 2346. (See Stats. 1985, ch. 96, § 1, pp. 231-232; Stats. 1985, ch. 106, § 10, pp. 257-258.) The only difference was that during 1987 and 1988 former Civil Code section 4513 did not include the first sentence of subdivision (d) of present Family Code section 2346; this sentence was added in 1989. (See Stats. 1989, ch. 1266, § 1, pp. 4994-4995.)
 

 Contrary to the position taken by Iva, the trial court’s power under Family Code section 2346 to enter a judgment dissolving the marriage nunc pro tunc is not limited to those instances where a second marriage has taken place after the date that the judgment could have been entered; the statute applies to every situation where injustice would result to a party whose rights are threatened by a delay that is not attributable to the fault of the party.
 
 (Adoption of Graham
 
 (1962) 58 Cal.2d 899, 904 [27 Cal.Rptr. 163, 377 P.2d 275] [former Civ. Code, § 133];
 
 Estate of Casimir
 
 (1971) 19 Cal.App.3d 773, 780 [97 Cal.Rptr. 623] [former Civ. Code, § 4515];
 
 Price
 
 v.
 
 Price
 
 (1966) 242 Cal.App.2d 705, 709-710 [51 Cal.Rptr. 699] [former Civ. Code, § 133];
 
 Hurst
 
 v.
 
 Hurst
 
 (1964) 227 Cal.App.2d 859, 867-868 [39 Cal.Rptr. 162, 19 A.L.R.3d 635] [former Civ. Code, § 133].) Since the statute permits the trial court to act on its own motion, a motion for entry of a judgment nunc pro tunc may be made by a third party, including the representative of the estate of a deceased party.
 
 (Hurst
 
 v.
 
 Hurst, supra,
 
 227 Cal.App.2d at p. 867;
 
 Kern
 
 v.
 
 Kern, supra,
 
 261 Cal.App.2d at pp. 328-329; see also
 
 Waller
 
 v.
 
 Waller
 
 (1970) 3 Cal.App.3d 456, 460 [83 Cal.Rptr. 533];
 
 Estate of Casimir, supra,
 
 19 Cal.App.3d at p. 777.)
 
 [13]
 

 The showing necessary to justify the exercise of the court’s power to enter judgment nunc pro tunc is apparently not onerous. Most of the pertinent cases have arisen under the predecessors to Family Code section 2346, but we see no reason why the principles expressed in these opinions should not be applied equally to the exercise of the trial court’s inherent power.
 

 Where the delay is the result of some action or inaction on the part of the court itself, entry of a nunc pro tunc judgment in order to protect the interests of one or all parties is mandated: “ ‘ “A court will always exercise [its inherent] authority when it is apparent that the delay in rendering the
 
 *1180
 
 judgment, or a failure to enter it after its rendition, is the result of some act or delay of the court, and is not owing to any fault of the party making the application. One class of the cases in which this authority may be exercised, . . . comprises those ‘actions in which no judgments have ever been rendered, but which are so far as the suitors can make them, in condition for the rendition of final judgments’. [Citation.] ‘The rule established by the general concurrence of the American and English courts is that, where the delay in rendering a judgment or a decree arises from the act of the court—that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, through the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties—the judgment or the decree may be entered retrospectively as of a time when it should or might have been entered up. In such cases, . . . it is the duty of the court to see that the party shall not suffer by the delay.’ ” ’ ”
 
 (Leavitt
 
 v.
 
 Gibson, supra,
 
 3 Cal.2d at p. 103; see also
 
 Fox
 
 v.
 
 Hale & Norcross S. M. Co., supra,
 
 108 Cal. at pp. 482-483.)
 

 When the conduct of a party is in issue, cases have held that it is enough to demonstrate the party lacked heedfulness or was merely inattentive in failing to take action when action was required.
 
 (Hurst
 
 v.
 
 Hurst, supra,
 
 227 Cal.App.2d at p. 867 [former Civ. Code, § 133]; see also
 
 Berry
 
 v.
 
 Berry
 
 (1956) 140 Cal.App.2d 50, 59 [294 P.2d 757] [same].) “Likewise, delay in the entry of the final judgment of divorce beyond the time when such judgment could have been obtained is a sufficient basis for finding inadvertence and negligence when the party entitled to such final judgment had no valid reason for such delay.”
 
 (Hurst
 
 v.
 
 Hurst, supra,
 
 227 Cal.App.2d at p. 867; see also
 
 In re Marriage of Tamraz
 
 (1994) 24 Cal.App.4th 1740, 1748 [30 Cal.Rptr.2d 233] [former Civ. Code, § 4513];
 
 Kern
 
 v.
 
 Kern supra,
 
 261 Cal.App.2d at pp. 334-335 [former Civ. Code, § 133].) On the other hand, it also has been said that a party’s mere failure to act, standing alone, does not establish adequate grounds for entry of a nunc pro tunc judgment. (See
 
 In re Marriage of Frapwell
 
 (1975) 53 Cal.App.3d 479, 484-485 [125 Cal.Rptr. 878] [former Civ. Code, §§ 1413 & 1415; the declarations showed that an earlier application was not prevented by any neglect, ignorance or inadvertence, but because of a deliberate decision by the spouse’s executor to await the progress of an appeal]; see also
 
 Berry
 
 v.
 
 Berry, supra,
 
 140 Cal.App.2d at pp. 59-60.)
 

 The trial court in the instant case decided not to enter judgment nunc pro tunc because it concluded in part that a termination of the marriage made effective before Herbert’s death would deprive Iva of “vested rights.” As the trial court put it, “[Iva’s]
 
 property rights
 
 as the widow of the deceased vested
 
 *1181
 
 after the point in time in which the nunc pro tunc judgment in this matter could be entered.” The trial court relied upon
 
 Adoption of Graham, supra,
 
 58 Cal.2d 899.
 

 Graham
 
 involved a final judgment of divorce entered in October 1960 but made operative as of June 1952. The effective date of this judgment preceded the birthdates of two children fathered by the husband while he was living with a woman who was legally married to another person. The children had been placed with an adoption agency pursuant to a relinquishment filed with the State Department of Social Welfare and executed by the mother and the person to whom she was married at the time the children were bom. The husband claimed that because the nunc pro tunc judgment made him a single person before the birth of the children, he was their legitimate and, for other reasons, their adoptive father. Therefore his consent was required before the children could be placed for adoption.
 
 (Adoption of Graham, supra,
 
 58 Cal.2d at pp. 901-903.)
 

 The Supreme Court held the nunc pro tunc judgment did not invalidate the relinquishments executed by the mother and the person to whom she had been married because these individuals had “vested rights” in the relinquishments.
 
 (Adoption of Graham, supra,
 
 58 Cal.2d at p. 907.) The court relied upon a certain statutory provision which made an adoption relinquishment final and binding upon its filing with the State Department of Social Services and subject to later rescission only upon the mutual consent of the adoption agency and the persons who gave up the child.
 
 (Id.
 
 at p. 905.) The court concluded: “The legislative scheme for the placement of relinquished children contemplates that the statutory proceedings will progress unhampered by extrinsic matter and with assurance that proper proceedings may consummate a valid adoption ....[*][] The question before the court is fundamentally one of adoptive procedures, and the Legislature has provided extensive provisions therefor. Such provisions must be construed with the view of accomplishing their purpose. [Citation.] The purpose may best be accomplished, and the interest of the children best served, by giving continuing effect to those relinquishments which were valid when entered into and filed in the manner [specified by applicable law].”
 
 (Id.
 
 at pp. 906-907.)
 

 Graham
 
 does not prohibit entry of a nunc pro tunc judgment in the case before us. The
 
 Graham
 
 court did not invalidate the backdated judgment as between the father of the children and his spouse. It simply held that the judgment did not operate to bind third parties whose rights were established under other applicable laws which, for policy reasons, were entitled to prevail over the judgment.
 

 
 *1182
 
 Moreover, the Courts of Appeal have not applied
 
 Graham
 
 to situations where the alleged vested right claimed by the surviving spouse consisted of an inheritance. (See
 
 Estate of Casimir, supra,
 
 19 Cal.App.3d 773, 781;
 
 Waller
 
 v.
 
 Waller, supra,
 
 3 Cal.App.3d at p. 467;
 
 Price
 
 v.
 
 Price, supra,
 
 242 Cal.App.2d at pp. 709-710.) In
 
 Waller
 
 v.
 
 Waller, supra,
 
 3 Cal.App.3d at pages 466-467, for example, the court found the entry of a nunc pro tunc final divorce judgment proper when one spouse, through inadvertence, mistake or excusable neglect, failed to have a judgment entered before his death. The effect of the antedated judgment was to divest the other spouse of her right to inherit from the decedent.
 
 (Id.
 
 at p. 466.) Distinguishing
 
 Graham,
 
 the court said: “A controlling element in the decision [in Graham] was the provision of Civil Code section 224m to the effect that the ‘relinquishment authorized by this section ... is final and binding and may be rescinded only by the mutual consent of the adoption agency [which did not consent] and the parent or parents relinquishing the child.’
 
 (Id.
 
 at p. 905.) [f] Unlike
 
 Graham,
 
 we are not dealing here with a right which the Legislature has declared may not be divested. [Citation.] We adhere, therefore, to the settled rule which authorized the court to enter the final decree herein antedating the death of defendant. (See,
 
 Kern
 
 v.
 
 Kern, supra,
 
 261 Cal.App.2d at pp. 332-333;
 
 Hamrick
 
 v.
 
 Hamrick
 
 (1953) 119 Cal.App.2d 839 [260 P.2d 188];
 
 Hull
 
 v.
 
 Hull
 
 [(1951)] 102 Cal.App.2d 382 [227 P.2d 546];
 
 Estate of Hughes
 
 (1947) 80 Cal.App.2d 550 [182 P.2d 253].) In each of the last-cited cases, ‘vested’ rights of inheritance were necessarily or inferentially divested by the action of the court.”
 
 (Waller
 
 v.
 
 Waller, supra,
 
 3 Cal.App.3d at p. 467.)
 

 It remains to be determined whether the trial court erred when it denied, by its formal written order of October 25, 1995, appellant’s motion for nunc pro tunc treatment of the September 7, 1994, judgment. On the thin record made available to us it is impossible to assign to either Iva or Herbert any responsibility for any part of the delay between January 5, 1988, the day the case was submitted, and April 25, 1988, the day Herbert died. Herbert was in his mid-60’s, and nothing before us suggests he was in poor health or had any life-threatening physical condition of which he or the trial court was aware. There was no dispute between the parties concerning the termination of their marriage; each in their respective pleadings requested a dissolution on the ground of “irreconcilable differences” (former Civ. Code, § 4506, subd. (1), now Fam. Code, § 2310). Nevertheless, the property issues were vigorously contested. It seems likely the trial court was not able to render a decision before April 25, 1988, because the evidence introduced during the trial presented a number of complex and difficult factual issues arising from the parties’ conflicting claims with respect to the various properties involved. (See
 
 Leavitt
 
 v.
 
 Gibson, supra,
 
 3 Cal.2d at p. 105.)
 

 It is considerably less clear why appellant, as executor of Herbert’s estate, waited for more than six years after Herbert died before moving to substitute
 
 *1183
 
 into the dissolution action, to set aside the stipulation, and for nunc pro tunc entry of a judgment. (See
 
 Kern
 
 v.
 
 Kern, supra,
 
 261 Cal.App.2d at p. 336 [an issue was whether failure to seek a final decree of divorce was due to mistake, negligence or inadvertence on the part of the conservator of the incapacitated wife].) Although the record discloses that Iva filed a contest of Herbert’s will and Herbert’s will was admitted to probate, we have no other information about the probate proceeding.
 

 The more than six-year unexplained delay between Herbert’s death and the filing of appellant’s first motion for a backdated judgment might put us in a position to affirm the trial court’s order denying appellant’s second motion for nunc pro tunc treatment of the 1994 judgment, on the ground appellant has not established an abuse of discretion by the trial court, but we decline to do so. At the time it ruled, the trial court was faced with the several cases which appear to say that in a marital dissolution action only “adjudicated” or “decided” issues may properly be the subject of a judgment entered after the death of a party. In addition, the trial court apparently believed that
 
 Graham
 
 eliminated any discretion it otherwise might have had to enter a judgment nunc pro tunc as of a date before Herbert died. Under these circumstances, we will vacate the trial court’s order denying appellant’s motion for nunc pro tunc treatment of the September 7, 1994, judgment and remand with directions that authorize appellant to pursue the motion if he wishes to do so.
 

 Disposition
 

 The trial court’s order of October 25, 1995, setting aside the judgment entered on September 7, 1994, is vacated.
 

 The trial court’s order of October 25, 1995, denying appellant’s motion for entry of the September 7,1994, judgment nunc pro tunc as of a date prior to the death of Herbert Mallory, is vacated. The matter is remanded to the trial court. If appellant desires to renew his motion for nunc pro tunc treatment of the judgment, he shall serve and file a notice to that effect not later than 30 days after the remittitur is issued. The parties shall be permitted to timely bring before the trial court in a proper fashion all admissible evidence they may wish to present which bears upon the question whether the judgment should be entered nunc pro tunc as of a date prior to April 25, 1988. (Cf.
 
 In re Marriage of Martinez
 
 (1984) 156 Cal.App.3d 20, 34 [202 Cal.Rptr. 646], disapproved on other grounds in
 
 In re Marriage of Fabian
 
 (1986) 41 Cal.3d 440, 451 [224 Cal.Rptr. 333, 715 P.2d 253].)
 

 
 *1184
 
 Appellant shall recover his costs on appeal.
 

 Martin, Acting P. J., and Stone (W. A.), J., concurred.
 

 [1]
 

 The precise date when the last written argument was presented to the trial court is not entirely certain.
 

 [2]
 

 The captions of the documents in the appellate record and of the parties’ briefs identify Herbert as the “appellant” on this appeal. However, Dan Mallory, as the appointed executor under Herbert’s will and the substituted respondent in place of Herbert in the underlying action, is the proper party appellant in this court. (See
 
 Kern
 
 v.
 
 Kern
 
 (1968) 261 Cal.App.2d 325, 328-329 [67 Cal.Rptr. 802].) Our caption names Dan Mallory in his representative capacity as the appellant.
 

 *
 

 See footnote,
 
 ante,
 
 page 1165.
 

 [3]
 

 Neither party challenges the legitimacy of either motion. We therefore assume for purposes of this opinion that the two motions were each proper, timely, and procedurally sufficient.
 

 [4]
 

 All statutory references are to the Code of Civil Procedure unless otherwise indicated.
 

 [5]
 

 “Adjudicate” commonly means “[t]o determine finally.” (Black’s Law Diet. (6th ed. 1990) p. 42, col. 1.) As appellant points out, “adjudicated” as used in the cases relied upon by Iva cannot mean a final judgment because the statement in those cases would then be nonsensical.
 

 [6]
 

 Family Code section 2344, subdivision (a), provides that the death of either party
 
 after entry of the judgment
 
 does not prevent the judgment from becoming a final judgment in accord with the statutes which govern the finality of judgments in marital dissolution actions.
 

 [7]
 

 The “fault theory” of divorce was eliminated with the enactment of the Family Law Act, effective January 1, 1970. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Husband and Wife, § 86, p. 107.)
 

 [8]
 

 Interlocutory judgments of divorce were eliminated by the Legislature in 1983. (11 Witkin, Summary of Cal. Law,
 
 supra,
 
 Husband and Wife, § 157, p. 183.) Although an interlocutory judgment under the former law did not irrevocably determine the rights of the
 
 *1174
 
 parties, it was subject to many of the rules of finality pertaining to judgments.
 
 {Id.
 
 at § 155, pp. 180-181.) For example, (1) it could not be set aside except by motion for new trial, appeal, a timely motion under section 473, or an independent action in equity; (2) it was appealable under the final judgment rule; and (3) it was res judicata between the parties as to the validity of the marriage after the time for motions in the trial court and appeal had passed. (11 Witkin, Summary of Cal. Law,
 
 supra,
 
 Husband and Wife, § 155, pp. 180-181.) For this reason, we have in our references to the cases which applied the former law treated interlocutory judgments as the equivalent of final judgments under current law. A case decided well after the 1965 amendment to section 669 viewed the statute as being applicable when a party died after submission of the case but before entry of the interlocutory judgment.
 
 {In re Marriage of Shayman, supra,
 
 35 Cal.App.3d at p. 652.)
 

 [9]
 

 It appears that the time for an appeal of the interlocutory judgment entered in
 
 McClenny
 
 had expired before the wife died.
 
 {McClenny
 
 v.
 
 Superior Court, supra,
 
 62 Cal.2d at p. 142; Historical Notes, 23 West’s Ann. Court Rules, pt. 1 (1996 ed.) foil. Cal. Rules of Court, rules 2 & 3, pp. 35-36, 65.)
 

 [10]
 

 The parties to this appeal differ about the need for, or the effect of, a nunc pro tunc entry of the September 7, 1994, judgment we will resurrect. We will not comment on these topics and will give respondent the opportunity on remand to renew his motion for nunc pro tunc treatment of the reinstituted judgment if he desires to do so.
 

 [11]
 

 Between 1969 and 1983 former Civil Code sections 4513 and 4515 dealt with nunc pro tunc judgments. (See Stats. 1969, ch. 1608, pp. 3326-3327.) The former addressed interlocutory judgments of divorce and the latter dealt with final judgments of divorce.
 
 (Ibid.)
 
 In 1983, when interlocutory judgments were eliminated, former Civil Code section 4513 was amended to conform the nunc pro tunc power to the new single judgment procedure (Stats. 1983, ch. 1159, § 4, pp. 4383-4384), and section 4515 was repealed (Stats. 1983, ch. 1159, § 6 p. 4385). Former Civil Code section 4515 was a substantial reenactment of former Civil Code section 133. (Historical Note, 12A West’s Ann. Civ. Code (1983 ed.) foil, former § 4515, pp. 337-338.) As originally enacted, former Civil Code section 133 read as follows: “ ‘Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed or entered, if no appeal has been taken for the interlocutory judgment or motion for a new trial made, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment upon the filing thereof.’ ” (Historical Note, 12A West’s Ann. Civ. Code,
 
 supra,
 
 foil, former § 4515, pp. 337-338.)
 

 [12]
 

 As amended in 1951, former Civil Code section 131.5 read: “In cases in which the court has determined that a divorce ought to be granted, but by mistake, negligence or inadvertence, the interlocutory judgment has not been signed, filed or entered, the court may[, in default cases on motion of either party with notice to the other and in contested cases, on motion of either party with notice to the other and a showing that no appeal is to be taken in the action or a motion for a new trial made,] cause the interlocutory judgment to be signed, dated, filed and entered therein as of the date when the same could have been signed, dated, filed and entered originally.... Upon the entry of such interlocutory judgment, the parties shall have
 
 *1179
 
 the same rights to a final judgment that they would have had, had the interlocutory judgment been entered upon the date when it could have been entered originally.” (Stats. 1951, ch. 229, § 1, p. 494.)
 

 [13]
 

 Standing has also been conferred upon an attorney for the deceased party
 
 (In re Marriage of Shayman, supra,
 
 35 Cal.App.3d at p. 650) and upon the deceased party’s second spouse
 
 (Hamrick
 
 v.
 
 Hamrick
 
 (1953) 119 Cal.App.2d 839, 844 [260 P.2d 188]).